**Randy GASPER, Petitioner–Appellee,**

v.

**Frank GUNTER, Executive Director, Colorado Department of Corrections, Respondent–Appellant.**

**No. 92SA209.**

Supreme Court of Colorado, En Banc.

May 10, 1993.

---

Randy Gasper, pro se.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., John August Lizza, First Asst. Atty. Gen., Paul S. Sanzo, Sr. Asst. Atty. Gen., Denver, for respondent-appellant.

Justice SCOTT delivered the Opinion of the Court.

Petitioner-appellee Randy Gasper (Gasper) filed a petition for writ of habeas corpus with the district court seeking immediate discharge from the custody of the Colorado Department of Corrections (Department). In his petition, Gasper challenged the constitutionality of section 17–22.5–303(7), 8A C.R.S. (1992 Supp.), on the basis that it is an ex post facto law as applied to him. In accordance with the contested statute, which does not permit credit for time on parole if parole is subsequently revoked, the Department excluded the time Gasper had spent on parole in computing his discharge date from confinement, given that Gasper had violated the terms of his parole. The district court agreed with Gasper that section 17–22.5–303(7) is an ex post facto law, as applied, on the grounds that the statute had the effect of disadvantaging Gasper by increasing the duration of his jail sentence.

Respondent-appellant Frank Gunter, in his capacity as Executive Director of the Department, seeks review of the ruling of the district court. We have jurisdiction of his appeal pursuant to section 13–4–102(1)(e), 6A C.R.S. (1987). Gunter asserts first that section 17–22.5–303(7), as applied to Gasper, is not an ex post facto law because that provision was not applied retrospectively, but rather was applied prospectively, on Gasper's violation of the terms of his parole, which occurred well after the statute's effective date. Gunter further argues that the rescission of parole time did not increase Gasper's original sentence term, and therefore the application of section 17–22.5–303(7) does not inflict a greater punishment on Gasper than that allowed at the time of his sentencing. We agree with Gunter and hold that section 17–22.5–303(7) was applied prospectively to Gasper, inasmuch as it was Gasper's later parole violation which gave rise to the annulment of parole time that otherwise could be credited toward his sentence, and further, that the revocation of Gasper's parole time does not constitute additional punishment beyond that originally imposed by the sentencing court. Because section 17–22.5–303(7) as applied to Gasper is not an ex post facto law, we reverse.

## I

On September 8, 1987, Randy Gasper was sentenced to serve four years and one day in the custody of the Department as a result of his conviction for the unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance, a class 5 felony, in violation of section 18–18–105(4)(d), 8B C.R.S. (1986). Gasper was initially incarcerated from September 8, 1987 to July 1, 1989, i.e., a total of 658 days in confinement. On July 1, 1989, Gasper was granted parole status, but on November 16, 1989, he violated the conditions of his parole, and consequently his parole was revoked. Gasper was reparoled on April 10, 1990, but he once again violated the terms of his parole, and on July 5, 1991, his parole was revoked for a second time.

The Department rescinded Gasper's parole time pursuant to section 17–22.5–303(7), which prohibits the crediting of time an inmate spends on parole if the inmate's parole is later revoked. The statute, made effective July 1, 1987, eleven days after Gasper committed his offense, but roughly two years prior to the commencement of his first parole, provides in relevant part:

Upon a determination that the conditions of parole have been violated in a parole revocation proceeding, the state board of parole shall continue the parole in effect, modify the conditions of parole if circumstances then shown to exist require such modifications, which circumstances shall be set forth in writing, or revoke the parole and order the return of the offender to a place of confinement designated by the executive director for a period of not more than five years. *In computing the period of reincarceration, the time between the offender's release on parole and the revocation of such parole shall not be considered to be any part of the term of the sentence.* In no event shall any period of reincarceration and sentence actually served ex-

ceed the sentence imposed pursuant to section 18–1–105, C.R.S.

§ 17–22.5–303(7), 8A C.R.S. (1992 Supp.) (emphasis added). Gunter maintained that because Gasper was paroled after the effective date of section 17–22.5–303(7), and because he violated the terms of his parole well after the effective date of the statute, Gasper was subject to its conditions. Thus, according to Gunter, upon the revocation of Gasper's parole, the interval of time Gasper had previously spent on parole should be disregarded by the Department in its computation of the date of his discharge from confinement.

On April 27, 1992, Gasper filed a petition for writ of habeas corpus with the district court,[1] asserting that the Department incorrectly withheld credit for time he had spent on his first and second paroles, i.e., from July 1, 1989 to November 15, 1989 and from April 10, 1990 to July 4, 1991, respectively. Gasper argued that because he was entitled to credit of approximately thirteen months[2] for time spent on parole prior to his parole revocations and had less than six months left to serve out his sentence, he was entitled to immediate release. Gasper based his argument on the grounds that the version of section 17–22.5–303(7) in effect on June 19, 1987, i.e., the day Gasper

committed the offense which resulted in his incarceration, was controlling and as such, the crediting of time he had spent on parole was mandatory. Unlike the statute that was made effective on July 1, 1987, the earlier version did not contain the provision which disallows the crediting of parole time toward an inmate's sentence if the inmate's parole is subsequently revoked.[3]

Gasper challenged the constitutionality of section 17–22.5–303(7) on the grounds that, as applied to him, it is an ex post facto law.[4] Gasper argued that the statute was applied retrospectively to him, and moreover, that its application effectively increased his punishment by extending the time he must spend in confinement. The district court agreed with Gasper, based on its application of the twofold test set out by our own court of appeals in *In re R.B.*, 815 P.2d 999, 1001 (Colo.App.1991), a decision which held that if a statute applies to an event occurring before its enactment and if it disadvantages the offender affected by it, the statute is a constitutionally prohibited ex post facto law. The court concluded that the latter prong in *In re R.B.* was violated inasmuch as "the change in the law at issue here clearly has an even more disadvantaging effect than the one in [*In re*] *R.B.* because it has an effect on this

---

1. At that time, Gasper had been incarcerated for three years, three months and eight days. Gasper was also credited, pursuant to a "good time credit" statute, with three months and seven days of additional time toward his sentence. It is therefore not disputed that on April 27, 1992, Gasper had served at least three years, six months and fifteen days of his four-year, one-day sentence.

2. Gasper was assigned "parole absconder" status from January 31, 1991 until July 5, 1991. There is no dispute that Gasper is not entitled to credit toward his sentence for this five-month, five-day period of time.

3. The 1986 statute provides in relevant part that:

   Upon a determination that the conditions of parole have been violated in a parole revocation proceeding, the state board of parole shall continue the parole if circumstances then shown to exist require such modification, or revoke the parole and order the return of the offender to the institution in which he was originally received for a period

of not more than five years. *In no event shall any period of reincarceration, subsequent term of parole, and sentence actually served exceed the sentence imposed pursuant to section 18–1–105, C.R.S.*

§ 17–22.5–303(7), 8A C.R.S. (1986) (emphasis added). We have interpreted the language of this statutory provision to mean that a parole violator cannot be reincarcerated for a period that exceeds the balance of time to be served on the violator's original sentence. *Anderson v. Kautzky,* 786 P.2d 1082 (Colo.1990).

4. *See* U.S. Const. art. I, § 9, cl. 3; art. I, § 10, cl. 1 and Colo. Const. art. II, § 11. The federal constitutional provisions forbid Congress and the states from enacting any ex post facto law. The parallel state provision uses similar language to prohibit the General Assembly from passing ex post facto legislation: "No ex post facto law, nor any law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the General Assembly."

petitioner's liberty interest." [5] The district court accordingly ordered that Gasper be credited with time served on parole against his sentence, and that he be immediately released from the Department. We disagree, and therefore reverse the ruling of the district court and vacate its order.

## II

The resolution of this case requires that we undertake an analysis of the meaning and scope of the ex post facto clauses of the United States and Colorado Constitutions. We begin this analysis with a review of the purposes underlying prohibitions against and the characteristics intrinsic to ex post facto legislation.

### A

■ The constitutional proscription against ex post facto legislation prohibits Congress and the states from enacting laws which "impose[ ] a punishment for an act which was not punishable at the time it was committed; or impose[ ] additional punishment to that then prescribed...." *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325–26, 18 L.Ed. 356 (1866). In the context of ex post facto challenges to criminal or penal statutes, we have followed *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), in holding that "[t]wo critical elements must be present for a criminal statute to be stricken down

as an ex post facto law: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *People v. Billips*, 652 P.2d 1060, 1064 (Colo.1982) (citing *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964); *see also Lindsey v. State of Washington*, 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937) (for a criminal or penal law to be ex post facto, it must apply to events occurring before its enactment, *and* it must disadvantage the offender affected by it).

■ The purpose underlying the proscription against ex post facto legislation has been attributed to the Framers' concern that legislative enactments provide "fair warning of their effect" in order that individuals may rely on the meaning and extent of the statutes until they have been formally and explicitly revised.[6] *Weaver*, 450 U.S. at 28–29, 101 S.Ct. at 963–64 (citing *Dobbert v. Florida*, 432 U.S. 282, 298, 97 S.Ct. 2290, 2300, 53 L.Ed.2d 344 (1977)). Thus, as is relevant here, the two defining characteristics of a prohibited ex post facto law: that it relates to conduct occurring before its effective date and that it inflicts additional punishment are intended to provide a reliable basis for ensuring that the Framers' intent be carried out, i.e., that persons are put on fair notice of the penalties which government may impose on those who violate the laws. *See also Peo-*

**5.** As noted *infra* at 916, in the context of challenges to criminal or penal statutes, both elements of ex post facto legislation, i.e., that the law be both retrospective and that it disadvantage the offender affected by it, must be present before a court can strike down the legislation. The district court, however, ruled that § 17–22.5–303(7) was unconstitutional upon finding that the legislation was "disadvantaging" to Gasper, and that as such, "the amendment at issue here cannot have a retroactive effect." Whether the statute in fact was applied retrospectively to Gasper was not explicitly analyzed by the district court; however, that court's reliance on *In re R.B.* is misplaced in any event. Although it is true that the court of appeals undertook an ex post facto analysis in resolving that controversy, the challenged statute in *In re R.B.*, § 24–72–308, 10B, C.R.S. (1988), is fundamentally civil in nature, which is subject to a "retrospective statute" analysis, and does not, as in the instant case, implicate ex post facto scrutiny. *See Peo-*

*ple v. D.K.B.*, 843 P.2d 1326, 1329 n. 2 (Colo. 1993), for the proposition that while the purposes of state ex post facto and retrospective legislation proscriptions are similar, the distinction between the two is that the ex post facto ban applies only to criminal cases while the retrospective proscription applies to civil cases. In *D.K.B.* we upheld the statute which the court in *In re R.B.* found unconstitutional as applied.

**6.** The ban against ex post facto legislation is also designed to place limitations on governmental power "by restraining arbitrary and potentially vindictive legislation," *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964 (citing *Malloy v. South Carolina*, 237 U.S. 180, 183, 35 S.Ct. 507, 508, 59 L.Ed. 905 (1915)), and to uphold the separation of powers by confining the legislature to decisions with prospective effect and the judiciary and executive to applications of existing law. *Id.* 450 U.S. at 29 n. 10, 101 S.Ct. at 964 n. 10.

*ple v. District Court,* 834 P.2d 181 (Colo. 1992) (Rovira, C.J., plurality opinion) (holding that where provisions of death penalty statute were declared unconstitutional after murder committed, as long as at the time of the alleged offense defendant had "fair warning" that first degree murder conviction could result in death penalty, application of death penalty statute did not violate ex post facto clause).

### B

■ The question of whether a criminal or penal law should be set aside as ex post facto turns, in part, on whether the contested legislation imposes a punishment for an act which was not punishable at the time it was committed. Legislation that relates to conduct which had occurred prior to any prohibition against such conduct, i.e., prior to the enactment or effective date of the legislation, is thus said to be impermissibly "retrospective," and such laws must be set aside as unconstitutional. In addressing the first element of the ex post facto clauses of the state and federal constitutions then, the "critical question is whether the law changes the legal consequences of acts completed before its effective date." *Weaver,* 450 U.S. at 31, 101 S.Ct. at 965. In *Weaver,* for example, the Supreme Court held unconstitutional a Florida statute that automatically reduced the amount of "gain time" [7] for good conduct and obedience to prison rules that could be deducted in the calculation of an inmate's sentence, because the self-operative statute was applied to prisoners who had been convicted for acts committed before the statute's effective date, i.e., the original felony convictions. Thus the Court held that the application of the Florida statute was retrospective in the ex post facto sense because it substantially altered the consequences attached, not to conduct occurring after the law's effective date, but rather to criminal activities which had already been completed. *Id.* at 31–33, 101 S.Ct. at 965–66.

■ While it is settled that criminal or penal legislation amending existing law may not change the legal consequences of acts completed before its effective date, legislation is not rendered unconstitutionally retrospective "merely because it might operate on a fact or status preexisting the effective date of the legislation...." *Billips,* 652 P.2d at 1064. Indeed, "as long as [the law's] punitive features apply only to acts committed after the statutory proscription becomes effective," it does not violate the ex post facto clause. *Id.; see also Zaragoza v. Director of Department of Revenue,* 702 P.2d 274 (Colo.1985) (statute not unconstitutionally retroactive when applied to revoke defendant's driver's license upon conviction for offense which occurred after effective date of statute, even though revocation based on defendant's previous conviction which occurred prior to effective date of statute); *People v. Thomas,* 189 Colo. 490, 542 P.2d 387 (1975) (recidivist statute cannot reasonably be challenged by proven habitual offender on notice of its possible use, and increased punishment under the statute not unconstitutional because it may only be imposed after proof of additional facts of prior convictions). In *Billips,* the defendant challenged a statute which provided that, for purposes of classifying the crime of escape from incarceration, persons in confinement for previously nonclassified felonies were deemed to have been convicted of a class 5 felony. The defendant argued that the nascent classification of his previously nonclassified felony conviction of simple robbery as a class 5 felony was retrospective and thus violated the federal and state prohibitions against ex post facto legislation. We held that because the contested statutory provision "gave notice to the defendant and others who commenced service of a sentence for a felony conviction prior to [the statute's effective date]," and further, because "the defendant's escape took place ... well after the effective date of the challenged statute, no retrospective application is involved in this case." *Billips,* 652 P.2d at 1065.

---

**7.** "Gain time" refers to time credited to decrease an inmate's prison term "for meritorious conduct or exceptional industry." *Weaver,* 450 U.S. at 25 n. 1, 101 S.Ct. at 962 n. 1.

As in *Billips*, the acts which triggered the application of section 17–22.5–303(7) to Gasper, and which subsequently led to the annulment of his parole time, occurred well after the effective date of the contested statute. Gasper violated his first parole on November 16, 1989, and his second parole on January 31, 1991. The statute in question was made effective on July 1, 1987, antedating Gasper's first parole violation by over two years. Thus Gasper, much like the defendant in *Billips*, had the requisite "fair warning" of the consequences of violating the conditions of his parole. Because section 17–22.5–303(7) was triggered by Gasper's acts which were committed after the statute became effective, the contested legislation does not violate the first element of the ex post facto prohibition.

### C

The second element and the remaining inquiry to be undertaken in analyzing the validity of ex post facto challenges to criminal or penal legislation is whether the legislation imposes "additional punishment not prescribed when committed." For purposes of ex post facto analyses, additional punishment has been held to refer to a variety of revisions in existing legislation, including, among others, the modification of a maximum prison term from discretionary to mandatory, *Lindsey v. Washington*, 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937), the application of a drug offender surcharge to persons convicted of drug-related offenses, *People v. Stead*, 845 P.2d 1156 (Colo.1993), the reduction in "gain time" for good behavior that can be deducted from a convicted criminal's sentence, *Weaver*, 450 U.S. at 36, 101 S.Ct. at 968, the imposition of solitary confinement prior to execution, *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 18 L.Ed. 356 (1866), and the permanent revocation of parole eligibility, *Fender v. Thompson*, 883 F.2d 303 (4th Cir.1989). In each of these cases, the penalties were appended to the offender's original sentence, *notwithstanding the absence of any further misconduct on the part of the offender*. Thus the inquiry underlying the latter element of the ex post

facto prohibition is whether the punishment exceeds the penalty originally imposed where the offender has not committed any additional criminal or institutional infraction. *See Billips*, 652 P.2d at 1064 (the ex post facto inhibition is inapplicable unless the original punishment for the offense committed is increased in some manner); *Weaver*, 450 U.S. at 33, 101 S.Ct. at 966 (criminal legislation must alter "quantum of punishment" attached to a crime already completed to offend the ex post facto clause); *Wood v. Beatrice Foods Co.*, 813 P.2d 821 (Colo.App.1991) (where legislation does not show an intent to impose further punishment for past crimes, but is incident to the regulation of a present situation, the law is sufficient to uphold the statute against ex post facto challenges), *cert. denied*, No. 91SC278 (1991).

Here, the original punishment imposed on Gasper, imprisonment for a period of four years and one day, is unaffected by section 17–22.5–303(7). That is, the revocation of Gasper's parole time credited toward his sentence, pursuant to 17–22.5–303(7), did not disadvantage Gasper from the standpoint of extending his original sentence. Rather, the forfeiture of parole credit was based on an incident discrete from the 1987 sentencing arising out of Gasper's felony conviction, and resulted from his parole violation which occurred more than two years later. Because section 17–22.5–303(7) merely mandates that, given Gasper's parole violation, he be returned to complete his original sentence, no additional punishment, within the meaning of the ex post facto prohibition, is inflicted upon him by virtue of the application of that statutory provision.

### III

Section 17–22.5–303(7), 8A C.R.S. (1992 Supp.) requires that the time Randy Gasper has spent on parole not be credited toward his criminal sentence. The application of the amended statute to Gasper was the result of Gasper's own conduct, i.e., the violation of the terms of his parole, which occurred long after the effective date of

the contested statute, such that Gasper was on notice at the time he violated his parole that any infringement of the conditions of parole would result in the rescission of parole time that could be credited to his sentence. Furthermore, the application of section 17–22.5–303(7) to Gasper inflicts no additional punishment upon him beyond that which was exacted by the sentencing court for his criminal violation. Because the contested statutory provision in this case was not applied retrospectively to Gasper, and because the effect of its application did not constitute punishment beyond that originally imposed on Gasper, we hold that section 17–22.5–303(7), 8A C.R.S. (1992 Supp.), as applied, does not implicate the ex post facto prohibitions of the United States and Colorado Constitutions.

With fair warning of the consequences, Randy Gasper violated the terms of his parole. He was, with the notice as necessitated by our constitution, the master of his fate. The district court's ruling is reversed and this matter is remanded to that court with directions to vacate its order and to conduct further proceedings consistent with the views herein expressed.