The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

**Michael Alan BRANTE, Defendant–Appellant.**

No. 07CA0427.

Colorado Court of Appeals, Div. IV.

Oct. 15, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Michael C. Mattis, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Whether the Sixth Amendment right to counsel requires that a *pro se* defendant who voluntarily absents himself from his criminal trial—as contrasted with such a defendant who is held to have waived the right of self-representation by engaging in disruptive behavior—be appointed counsel during his absence has not been decided by the United States Supreme Court and is unresolved in Colorado. We conclude that the trial court's failure to direct advisory counsel to take control of the case when defendant, Michael Alan Brante, voluntarily absented himself did not violate the Sixth Amendment. We further conclude that the choice of evils instruction Brante requested was not warranted by his offer of proof. Thus, we affirm the convictions on jury verdicts finding him guilty of stalking, section 18–9–111(4)(b)(I), C.R.S. 2009, child abuse, section 18–6–401(1)(a), burglary, section 18–4–203(1), violation of bail

bond conditions, section 18–8–212(1), and violation of a protection order, section 18–6–803.5(1).

## I. Factual Background

Brante lived with his long-term girlfriend, Shannon, and her two teenage sons from a prior relationship, whom Brante had helped raise. After Shannon and her sons moved out, Brante followed her to work, "yelling and screaming ... from his car window." He was arrested on charges of stalking and child abuse.

Brante was released on bond. While Shannon was at work, he went to her mother's house, where she and her sons were living. One of Shannon's sons saw Brante enter the home and called the police, who arrested him on the remaining charges.

After the trial court found Brante competent to proceed, he dismissed his public defender and sought to represent himself. The court cautioned Brante on the dangers of self-representation, but he insisted on proceeding *pro se*. The court granted the request and appointed advisory counsel. Later, it ruled that a choice of evils instruction would not be given based on Brante's offer of proof, which reflected his belief that Shannon and her sons were soon moving to Egypt where they might not be safe.

## II. Brante's Sixth Amendment Rights Were Not Violated

Brante does not dispute the validity of his pretrial waiver of the right to counsel or his midtrial waiver of the right to be present, but asserts that "the trial court violated his Sixth Amendment right to counsel when it prohibited advisory counsel from taking over the defense." We disagree because he voluntarily absented himself from the trial.

At the start of trial, the court explained "courtroom demeanor and behavior," warning Brante that "no profanity" would be allowed and "if the behavior is bad, if you're disruptive, if you argue or shout, I can have you taken out of the courtroom." Brante acknowledged that he understood.

Brante participated in jury selection and gave an opening statement. But midway through the prosecution's direct examination of its first witness, Brante voiced frustration that he was unable to "point out ... inaccuracies." After the jury was excused, Brante directed obscene gestures at the court and made a profane statement. The court found him in contempt, removed him from the courtroom, and remained in recess for the balance of the day.

The next day, Brante continued to insult the court and was again removed. The court told advisory counsel that it did not believe it had the authority to appoint him to represent Brante. Advisory counsel agreed. When Brante returned to the courtroom, the court admonished him that "[y]ou will not make a mockery of this process, and you will be civil throughout this proceeding. Do you understand me?" Brante stated, "I do." But after reading a statement, to which the court did not respond, Brante said, "I'm gone. I'm not going to be part of a kangaroo court. I'm not going to be part of it," and left the courtroom.

Advisory counsel convinced him to return to "hear what the Court has to say" about the consequences of not appearing. Then the following colloquy took place:

THE COURT: Mr. Brante, moments ago you walked out of the courtroom. I want to indicate to you that if you do—you certainly may decide that you want to absent yourself from the proceedings, but that means the proceedings will continue. That means witnesses will be called, evidence will be presented, and you will not be here to cross-examine them; do you understand that?

THE DEFENDANT: I do.

THE COURT: If you leave the courtroom, then you will not be permitted to make argument to the Court based upon evidence that was presented while you were gone. If you leave the courtroom, the trial will proceed without you being here. Do you understand that?

THE DEFENDANT: I think it's wrong, but yeah. THE COURT: All right. As long as you understand that's what the case is, that if you decide to leave the courtroom, I'm certainly not going to

direct that you be bound and gagged and placed in the courtroom. That will not occur. But if you wish to leave the courtroom, I want you to understand by doing so you are waiving your right to be present. You are waiving your right to ask questions of witnesses. You are waiving your right to call witnesses.

After this exchange, the court asked Brante if he was "prepared to have the jury brought in?" Brante responded that he was "now leaving the kangaroo courtroom." The court replied, "The record should reflect that Mr. Brante has voluntarily absented himself from the courtroom."

Advisory counsel requested permission to be excused because "if I have no one to advise, I shouldn't be here." The court granted the request, but asked that he return the next morning to see if Brante wished to appear. The trial proceeded.

The following morning, outside the jury's presence, advisory counsel told the court that Brante was "very indecisive" about returning. At the court's direction, a sheriff's deputy inquired of Brante and reported that he would not return to the courtroom. The court then excused advisory counsel, summoned the jury, and continued with the trial to verdict. *See* Crim. P. 43(b) (trial court may complete trial when defendant has waived right to be present).

### A. Standard of Review

■ Deprivation of the constitutional right to counsel constitutes a "structural defect" and is not subject to a harmless error analysis. *See United States v. Gonzalez–Lopez*, 548 U.S. 140, 148–49, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). In determining whether such a defect occurred here, we first examine the right to counsel and the right of self-representation. We then consider the circumstances under which invoking and then abandoning the right of self-representation requires appointment of counsel. Because Brante did not abandon his right of self-

representation, we conclude that the trial court properly declined to appoint counsel.

### B. Sixth Amendment

■ As relevant here, the Sixth Amendment provides that "[i] n all criminal prosecutions the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI; *see also* Colo. Const. art. II, § 16. This right is "a requisite to the very existence of a fair trial." *Argersinger v. Hamlin*, 407 U.S. 25, 31, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

Nevertheless, an accused may elect to proceed *pro se* and thereby relinquish "many of the traditional benefits associated with the right to counsel." *Downey v. People*, 25 P.3d 1200, 1203 (Colo.2001). "A criminally accused clearly has the right of self-representation. . . . The right is personal to the defendant, and the value it furthers is that of personal autonomy." *People v. Lucero*, 200 Colo. 335, 339, 615 P.2d 660, 662–63 (1980).

■ Despite this right, "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (citing *Illinois v. Allen*, 397 U.S. 337, 350–51, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)). The Supreme Court has not decided whether this circumstance requires the appointment of counsel, although *Faretta* noted the utility of having "standby counsel . . . available to represent the accused in the event that termination of the defendant's self-representation is necessary." 422 U.S. at 834 n. 46, 95 S.Ct. 2525.

Consistent with most other courts to have addressed the issue, a division of this court has required the trial court to find that, in certain circumstances, a disruptive *pro se* defendant has thereby waived his right to self-representation and must be "appointed counsel to represent [the] defendant's interests during the time he was excluded from the courtroom." *People v. Cohn*, 160 P.3d 336, 343 (Colo.App.2007) [1].

1. *Accord United States v. Mack*, 362 F.3d 597, 601 (9th Cir.2004) (reversing where trial court "direct[ed] removal" of defendant due to "obnox-

ious behavior," "effectively leaving him without representation," and holding that "[a] *[pro se]* defendant does not forfeit his right to representa-

But neither the Supreme Court nor any Colorado appellate opinion has addressed appointment of counsel for a *pro se* criminal defendant who, like Brante, voluntarily absents himself from the trial. Other courts have recognized that "[a] criminal defendant who has completely invoked the right to appear *pro se* may mount a defense consisting of nothing more than a protest against the court's legitimacy and a refusal to attend trial, and has no Sixth Amendment right to be protected from the prejudice that may result." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir.2008); *see also United States v. Lawrence*, 161 F.3d 250, 255 (4th Cir.1998) ("Because Lawrence was present at the beginning of his trial and voluntarily absented himself, there is no error in this case."); *Torres v. United States*, 140 F.3d 392, 402 (2d Cir.1998) ("We have concluded that Torres' decision not to participate in the proceedings did not undermine her knowing and intelligent waiver [of counsel]."); *State v. Worthy*, 583 N.W.2d 270, 280 (Minn.1998) ("The trial court did not abuse its discretion in not reappointing the dismissed attorneys as lead counsel when Worthy and McKinnis voluntarily left the courtroom.").

We have found no contrary authority, consider these cases well reasoned, and apply them here.

### C. Application

Brante does not assert a Sixth Amendment violation during the two periods that he was removed from the courtroom. Because thereafter he left on his own accord, after having been informed of the dangers of doing so, we conclude that the trial court was not obligated to appoint counsel. The presence of advisory counsel does not support a contrary conclusion.

■ When the right to self-representation is invoked, the trial court may "permit a defendant the assistance of some type of advisory counsel." *Downey*, 25 P.3d at 1203; *see People v. Romero*, 694 P.2d 1256, 1265 (Colo.1985). But "a *pro se* defendant has no constitutional right to advisory counsel," *Downey*, 25 P.3d at 1203, and "advisory counsel can assist the defendant only if and when the defendant requests such assistance." *Lucero*, 200 Colo. at 341, 615 P.2d at 664. This limitation exists because the *pro se* defendant, not advisory counsel, "must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle v. Wiggins*, 465 U.S. 168, 174, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).[2]

■ Here, without a request from Brante for counsel during his absence or obstreperous conduct justifying termination of his self-representation, the trial court's sua sponte appointment of counsel could have violated his right to self-representation. *See McKaskle*, 465 U.S. at 178, 104 S.Ct. 944 ("[P]articipation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself."); *Faretta*, 422 U.S. at 820, 95 S.Ct. 2525 ("The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally."); *Cohn*, 160 P.3d at 342–43.

Accordingly, we further conclude that the trial court did not violate Brante's Sixth

---

tion at trial when he acts out. He merely forfeits his right to represent himself in the proceeding."); *People v. El*, 102 Cal.App.4th 1047, 1049–50, 126 Cal.Rptr.2d 88, 91 (2002) (where defendant was removed from courtroom for disruptive behavior, trial court "erred by proceeding in [defendant's] absence when standby counsel was available to defend"); *Saunders v. State*, 721 S.W.2d 359, 363 (Tex.App.1985) (error "for the trial court to remove [defendant] without expressly terminating his right of self-representa-

tion based on his disruptive behavior and directing stand-by counsel to assume the management of [defendant's] defense.").

**2.** Because the record does not indicate that Brante requested advisory counsel's assistance during his absence, we express no opinion whether advisory counsel could or should have remained when the trial resumed to advise Brante of what had transpired in his absence.

Amendment right to counsel by declining sua sponte to appoint advisory counsel to take over the defense in his absence.

### III. Brante's Offer of Proof on Choice of Evils Was Insufficient

Brante next contends the trial court erred by refusing his pretrial request to instruct the jury on the affirmative defense of choice of evils. We agree with the trial court.

For his offer of proof, Brante stated that Shannon had begun a relationship with an Egyptian man whom she met on the internet and that she intended to move to Egypt along with her sons. He believed that Shannon was an unwary victim of an internet scam and that Egypt was unsafe. Upon his initial arrest, he informed the officer and court personnel of Shannon's planned move to Egypt, but neither offered assistance.

When Brante went home after being released on bond, he discovered that someone had stolen his passport and deleted electronic messages from Shannon regarding Egypt. He suspected that Shannon was trying to prevent him from "chas[ing] her" to Egypt. His pleas for help to Shannon's parents and her sons' biological father were unproductive.

Brante later entered Shannon's mother's home to retrieve proof of her Egypt plans. He believed he had "to pass the baton of responsibility ... to the kids' biological father so that he had all of the information he needed to do what needed to be done to keep the kids safe."

### A. Scope of Review

■ Under section 18–1–407(1), C.R.S. 2009, the defendant need only offer "some competent evidence" on the defense to receive an instruction. *See People v. Brandyberry*, 812 P.2d 674, 677 (Colo.App.1990). A reviewing court "determine[s], as a matter of law, whether the offer in the record, considered in a light most favorable to defendants, is substantial and sufficient in both quantity and quality to support the statutory defense." *Id.* at 678 (internal quotation marks omitted); *see* § 18–1–702(2).

### B. Law

The affirmative defense of choice of evils is codified at section 18–1–702, C.R.S.2009, which provides, as pertinent here:

> [C]onduct which would otherwise constitute an offense is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no conduct of the actor, and which is of sufficient gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

§ 18–1–702(1).

■ To be entitled to an instruction on this defense, "[t]he defendant must offer proof of the sudden and unforeseen emergence of a situation requiring his or her immediate action to prevent an imminent injury." *People v. Fontes*, 89 P.3d 484, 486 (Colo.App.2003).

In *Brandyberry*, 812 P.2d at 678, the division defined the following terms as used in section 18–1–702(1):

- "[E]mergency" means "'a sudden unexpected happening; a sudden or unexpected occasion for action; a pressing necessity; [or] an unforeseen combination of circumstances that calls for immediate action.'" *Id.* (second alteration in original) (quoting *Black's Law Dictionary* 469 (rev. 5th ed.1979)).

- "'Imminent' means 'near at hand, impending or on the point of happening.'" *Id.*

- "'Urgency' connotes a status demanding immediate attention."

*Id.* (citing *Webster's Third New International Dictionary* 2521). From these definitions, the division concluded that the availability of the choice of evils defense is limited to those instances where the defendant's conduct is "necessary because of the sudden and unforeseen emergence of a situation requiring the actor's immediate action to prevent

the occurrence of an imminently impending injury." *Id.* at 678–79.

## C. Application

██ Brante's speculative fears that the departure of Shannon and her sons was imminent, that they might be harmed in Egypt, or that he would be unable to find them after they departed, do not rise to the level of an impending injury demanding immediate action. *See People v. Handy,* 198 Colo. 556, 559, 603 P.2d 941, 943 (1979) ("The threats must be shown to be definite, specific, and imminent; mere speculation is not enough."); *Brandyberry,* 812 P.2d at 679 ("Evidence of a generalized fear of future injury is not sufficient to warrant the invocation of a choice of evils defense.").

Accordingly, we conclude that the trial court did not err in refusing to instruct the jury on the choice of evils defense.

The judgment is affirmed.

JUDGE ROMÁN and JUDGE BERNARD concur.