The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

John Raymond DeWITT, Defendant–
Appellant.

No. 10CA1271.

Colorado Court of Appeals,
Div. III.

Sept. 15, 2011.

Rehearing Denied Oct. 13, 2011.

John W. Suthers, Attorney General, Brock J. Swanson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rachel C. Funez, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LOEB.

Defendant, John Raymond DeWitt, appeals the judgment of conviction entered on jury verdicts finding him guilty of two counts of possession of a weapon by a previous offender (POWPO), pursuant to section 18–12–108(1), C.R.S.2011. We reverse and remand for a new trial.

## I. Background

On the morning of September 18, 2009, defendant walked from his apartment to a nearby King Soopers to buy groceries. He paid at a self-checkout cash register, and when he did not receive discounts on certain items, he went to the customer service counter to demand a refund. Defendant yelled at the employees on duty, used profanities, and paced in such a manner that his handgun, worn under his jacket in a holster, was visible. He continued this aggressive behavior for several minutes, prompting one employee to call 911 to report the disturbance.

When the police arrived, they checked defendant's criminal record. They arrested him for POWPO when they learned that he was a twice convicted felon—in 1985, he pleaded guilty to giving false information to a pawnbroker, and in 1988, he pleaded guilty to attempted distribution of a controlled substance.

Defendant was ultimately charged with two POWPO counts and one menacing count based on the King Soopers incident. The menacing count was dismissed on the morning of trial, and defendant was convicted by a jury of the POWPO counts. The trial court sentenced him to a six-month prison term for each count, to run concurrently, and this appeal followed.

## II. Constitutional Challenges

Because it is a dispositive issue, we first address defendant's contentions that the POWPO statute is unconstitutional as applied to him because it violates (1) the prohibition against ex post facto laws and (2) due process. We reject these contentions in turn.

### A. Preservation

Initially, we reject the People's argument that we should decline to address defendant's as-applied constitutional challenges because he did not raise them in the trial court.

Despite the supreme court's statement in dictum in *People v. Cagle*, 751 P.2d 614, 619 (Colo.1988), that "[i]t is axiomatic that this court will not consider constitutional issues raised for the first time on appeal," the supreme court and divisions of this court often review unpreserved claims of constitutional error under a plain error standard. *See People v. Greer*, 262 P.3d 929, 933 (Colo.App. 2011) (J. Jones, J., specially concurring) (collecting cases).

Accordingly, we likewise exercise our discretion to review defendant's as-applied constitutional challenges to the POWPO statute. In doing so, we note that a review at this point in the proceedings will promote efficiency and judicial economy, *see Hinojos–Mendoza v. People*, 169 P.3d 662, 667 (Colo. 2007), and that defendant's challenges do not require further factual development so that they are ripe for review and we are able to properly serve our appellate function. *See People v. Devorss*, 277 P.3d 829, 834, 2011 WL 1195783 (Colo.App.2011); *Wood v. Beatrice Foods Co.*, 813 P.2d 821, 822 (Colo.App. 1991) (court addressed ex post facto challenge where all of the facts necessary for resolution of the challenge were undisputed

and appeared in the appellate record); *cf. People v. Patrick,* 772 P.2d 98, 100 (Colo. 1989) ("we cannot determine the as-applied constitutionality of a statute based upon an incomplete record of the facts").

### B. Standard of Review

We review the constitutionality of a statute de novo. *Hinojos–Mendoza,* 169 P.3d at 668; *People v. Hicks,* 262 P.3d 916, 919 (Colo.App.2011). A statute is presumed to be constitutional, and to succeed in an as-applied challenge, "a defendant has the burden of establishing the unconstitutionality of a statute, as applied, beyond a reasonable doubt." *People v. Gutierrez,* 622 P.2d 547, 555 (Colo.1981).

### C. Ex Post Facto

Defendant contends the POWPO statute is an ex post facto law as applied to him. We disagree.

Prior to 1994, and at the time defendant was convicted of his two previous felonies, a conviction under the POWPO statute required proof of a prior conviction for burglary, arson, or any felony involving the use of force or violence or the use of a deadly weapon. *See* Ch. 167, sec. 17, § 18–12–108, 1975 Colo. Sess. Laws 621.

In 1994, the POWPO statute was amended so that proof of any prior felony conviction, violent or not, would sustain a POWPO conviction. Thus, the current version of section 18–12–108(1) provides in pertinent part:

> A person commits the crime of [POWPO] if the person knowingly possesses, uses, or carries upon his or her person a firearm ... subsequent to the person's conviction for a felony....

Defendant was charged with two POWPO counts under the amended statute, and his appeal requires us to determine if the statute is an ex post facto law as applied to him because he committed the predicate felony for each count prior to 1994. This is an issue of first impression in Colorado.

The ex post facto prohibitions found in the United States and Colorado Constitutions, *see* U.S. Const. art. I, § 10; Colo. Const. art. II, § 11, forbid the General Assembly from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 71 U.S. 277, 325–26, 4 Wall. 277, 18 L.Ed. 356 (1866)); *accord People v. Billips,* 652 P.2d 1060, 1064 (Colo. 1982). The prohibitions are designed to assure that laws give "fair warning of their effect" so that individuals may rely on their meaning until they have been explicitly revised. *Weaver,* 450 U.S. at 28–29, 101 S.Ct. 960. The prohibitions also restrict governmental power by "restraining arbitrary and potentially vindictive legislation." *Id.* at 29, 101 S.Ct. 960.

Two elements must be present before a criminal law will be stricken as ex post facto in violation of the federal and state constitutional prohibitions. First, "it must be retrospective, that is, it must apply to events occurring before its enactment," and second, "it must disadvantage the offender affected by it." *Id.; accord Billips,* 652 P.2d at 1064; *In re R.B.,* 815 P.2d 999, 1001 (Colo.App.1991).

As to the first element, a law will be unconstitutionally retrospective if it changes the legal consequences of acts completed before its effective date. *Gasper v. Gunter,* 851 P.2d 912, 917 (Colo.1993) (citing *Weaver,* 450 U.S. at 31, 101 S.Ct. 960). A law is not retrospective, however, "merely because it might operate on a fact or status preexisting the effective date of the legislation, as long as its punitive features apply only to acts committed after the statutory proscription becomes effective." *Billips,* 652 P.2d at 1064.

As to the second element, the relevant inquiry is whether the law imposes additional punishment not prescribed when the acts were committed, in other words, "whether the punishment exceeds the penalty originally imposed where the offender has not committed any additional criminal ... infraction." *Gasper,* 851 P.2d at 918.

■ Applying these legal principles, we conclude that the amended POWPO statute as applied to defendant does not violate the constitutional prohibitions against ex post facto laws. The prohibited conduct here—defendant's possession of a firearm—occurred in 2009, well after the 1994 amendment. It does not matter that defendant's predicate felonies occurred before the change in the law, because he was punished for conduct occurring after the change. *See Billips*, 652 P.2d at 1064; *People v. Bastian*, 981 P.2d 203, 206 (Colo.App.1998) (no ex post facto violation where one or some of the elements of an offense are committed prior to the effective date of a new statute, but the crime is not completed until after the effective date); *see also People v. Dalton*, 70 P.3d 517, 520–21 (Colo.App.2002). Thus, by definition, the 1994 amendment to the POWPO statute is not retrospective.

Other courts applying comparable statutes have reached similar conclusions. *See, e.g., United States v. Pfeifer*, 371 F.3d 430, 436–37 (8th Cir.2004) (so long as the act of possessing a firearm is committed after enactment of a federal statute proscribing possession by a prior offender, there is no ex post facto violation); *United States v. Hemmings*, 258 F.3d 587, 594 (7th Cir.2001); *United States v. Mitchell*, 209 F.3d 319, 322–23 (4th Cir.2000); *United States v. Brady*, 26 F.3d 282, 290–91 (2d Cir.1994); *State v. Swartz*, 601 N.W.2d 348, 350–51 (Iowa 1999); *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918, 924–25 (2001) (rejecting an ex post facto challenge to Nebraska's POWPO statute, and noting that "[t]he overwhelming majority of courts … hold that a conviction under a statute forbidding possession of a firearm by a person convicted of a felony does not violate the Ex Post Facto Clause even when the felony or felonies for which the defendant was convicted took place before the statute was enacted"). The critical factor in each of these decisions (as is the case here) is that the prohibited conduct—possession of a firearm—occurred after enactment of the statute at issue. *See Pfeifer*, 371 F.3d at 436.

The cases on which defendant relies, particularly *Weaver* and *R.B.*, are, therefore, distinguishable because the defendants in those cases were punished under a new law for conduct completed entirely before the new law took effect.

Because the amended POWPO statute is not impermissibly retrospective as applied to defendant, there is no ex post facto violation, and we need not address the second element in the ex post facto analysis (whether the statute disadvantaged defendant). *See Bastian*, 981 P.2d at 206.

## D. Due Process

Defendant contends the amended POWPO statute as applied to him violates his right to due process. We are not persuaded.

■ To the extent defendant argues a due process violation because he had no notice or opportunity to challenge the amended statute based on its alleged prohibition of his right to bear arms, we reject this argument because "[t]he requirements of due process are satisfied by the notice which is given through publication of the statutes." *People v. Shaver*, 630 P.2d 600, 604 (Colo.1981) (quoting *People v. McKnight*, 200 Colo. 486, 497, 617 P.2d 1178, 1186 (1980)); *see also Cendant Corp. v. Dep't of Revenue*, 226 P.3d 1102, 1108 (Colo.App.2009) ("When the government implements laws that adversely affect individual interests, the publication of those laws provides adequate notice to satisfy constitutional due process.").

■ To the extent defendant makes a separate argument that his due process rights were violated because he had no notice when he entered his guilty pleas that his convictions would prevent him from later possessing a gun, we reject this argument as well. Defendant cites no authority in support of this argument, and, in any event, his reply brief makes clear that he is not challenging the validity of his prior guilty pleas.

Accordingly, we conclude that application of the amended POWPO statute to defendant does not violate his right to due process.

## III. Affirmative Defense Instructions

Defendant contends the trial court erred by refusing to give his tendered jury instruc-

tions regarding the affirmative defense of the right to bear arms. We agree.

■ Under the Colorado Constitution, a person has the right "to keep and bear arms in defense of his [or her] home, person and property." Colo. Const. art. II, § 13; *see People v. Blue*, 190 Colo. 95, 103, 544 P.2d 385, 391 (1975).[1] Thus, a defendant charged with POWPO may raise as an affirmative defense that he or she possessed a weapon for the constitutionally protected purpose of defending his or her home, person, or property. *People v. Ford*, 193 Colo. 459, 462, 568 P.2d 26, 28 (1977); *see also* CJI–Crim. 7:63 (1993). As long as there is competent evidence in the record of a constitutionally protected purpose, a defendant is entitled to such an affirmative defense, and it will be for the jury to decide the issue of the defendant's purpose in possessing the weapon. *See Ford*, 193 Colo. at 462, 568 P.2d at 28.

■ A defendant need only present "some credible evidence" in support of the affirmative defense, which is another way of stating the "scintilla of evidence" standard. *See* § 18–1–407(1), C.R.S.2011; *People v. Saavedra–Rodriguez*, 971 P.2d 223, 228 (Colo.1998) (applicable standard "merely requires some evidence to support the defense"). The evidence necessary to justify an affirmative defense instruction may come solely from the defendant's testimony, however improbable. *See People v. Speer*, 255 P.3d 1115, 1119 (Colo.2011); *Lybarger v. People*, 807 P.2d 570, 579 (Colo.1991). If the defendant meets this standard, the prosecution then has the burden to disprove the affirmative defense beyond a reasonable doubt. *People v. Taylor*, 230 P.3d 1227, 1230 (Colo.App.2009); *see Ford*, 193 Colo. at 463, 568 P.2d at 29.

■ We review de novo whether the evidence in the record, considered in the light most favorable to the defendant, is substantial and sufficient in both quantity and quality to warrant the giving of the affirmative defense instruction. *People v. Brante*, 232 P.3d 204, 209 (Colo.App.2009). A trial court's error in refusing to give an affirmative defense instruction improperly lowers the prosecution's burden of proof, and, therefore, the error cannot be deemed harmless. *Taylor*, 230 P.3d at 1230 (citing *People v. Garcia*, 113 P.3d 775, 784 (Colo.2005)).

In this case, defendant tendered the following affirmative defense instruction, which was rejected by the court:

> It is an affirmative defense to the crime of [POWPO] that the defendant's purpose in possessing weapons was the defense of his home, person, and property.

The trial court also rejected defendant's related tendered instruction regarding the prosecution's burden of proof as to the affirmative defense.

In rejecting defendant's tendered instructions, the court made the following ruling:

> So the question is, was there competent evidence to indicate that [defendant] had a legitimate threat, legitimate concern for his personal safety or safety of his property that would allow this affirmative defense to be used to carry a weapon into King Soopers?
>
> [Defendant] testified that the only incident that had occurred in the King Soopers was bumping into another customer at some time prior to the September 18, 2009, incident, that he had no fear for his own safety in King Soopers, and he further testified that even if he'd had fear for his safety, he would never use that gun in the King Soopers or in a store like that.
>
> Therefore, I'm finding that there was insufficient evidence to indicate that there was any threat to [defendant], other than a generalized concern that he had about society as a whole, and so I am not gonna [sic] provide the affirmative defense instruction to the jury.

■ Based on our de novo review of the record in this case, we conclude defendant's testimony was sufficient to support the tendered affirmative defense instructions on his constitutional right to bear arms. Defendant testified that he regularly walked from his

---

1. Defendant expressly bases his contention solely on article II, section 13 of the Colorado Constitution. Accordingly, we need not address any issues regarding the Second Amendment to the United States Constitution.

apartment to the King Soopers in question armed with his handgun. When asked for his reason for purchasing and carrying the gun, including on the morning of his arrest, defendant testified several times that it was for "self-defense." He also stated that he had "concerns for [his] personal safety" and for his "property," both in his home and in his neighborhood. According to defendant's testimony, he was aware of reports of recent muggings at the King Soopers, and he had "seen some things in [his] own neighborhood that just ... put the alert on, put [him] in a code yellow ... more of an alert status, where [he] used to be more relaxed and never worried about anything." In addition, defendant testified that someone had attempted to break into his apartment twice in 2009. Thus, defendant not only testified to a general fear for his personal safety, but also tied his fear to specific trends of violence and incidents in the areas where he regularly walked and in the stores that he regularly visited, including the King Soopers store.

Viewing this testimony in the light most favorable to defendant, we conclude it constitutes some credible evidence that he carried his handgun for the constitutionally protected purposes of defending his person and his property.

This case is distinguishable from *People v. Barger*, 732 P.2d 1225, 1226 (Colo.App.1986), relied on by the People and by the trial court in its ruling. In *Barger*, the defendant chose to carry a gun into a bar, but there was no evidence in the record that he reasonably feared for his safety on his way to the bar or in the bar itself.

Accordingly, we conclude defendant carried his burden to present "some credible evidence" of the affirmative defense to a POWPO charge, and, therefore, the trial court erred when it refused to give his tendered jury instructions. Defendant was entitled to have the jury decide if he carried his gun into the King Soopers for a protected purpose. *See Ford*, 193 Colo. at 462, 568 P.2d at 28.

Because the court's error cannot be deemed harmless, we reverse defendant's POWPO convictions and remand for a new trial. *See Taylor*, 230 P.3d at 1230.

## IV.   Mental State for POWPO

Because it is likely to arise on remand, we address and reject defendant's contention that the "knowingly" mental state required for a POWPO conviction applies to the prior felony conviction element of the offense.

Before 1994, the POWPO statute provided as follows:

> Any person previously convicted of burglary, arson, or a felony involving the use of force or violence or the use of a deadly weapon ... within the ten years next preceding or within ten years of his [or her] release or escape from incarceration ... who possesses, uses, or carries upon his [or her] person a firearm ... commits a class 5 felony.

*See* Ch. 167, sec. 17, § 18–12–108, 1975 Colo. Sess. Laws 621. Although this prior version of the statute contained no express mental state, our supreme court held that the statute implied a mental state as to the possession element of the offense. In *People v. Tenorio*, 197 Colo. 137, 144, 590 P.2d 952, 957 (1979), the court held that, in order to convict a defendant of POWPO, "the jury must find, not mere possession, but that the defendant 'knowingly' possessed the weapon and that he [or she] understood that the object possessed was a weapon." *See also People v. Gross*, 830 P.2d 933, 940 (Colo.1992).

As discussed above, in 1994, the General Assembly amended the POWPO statute to include an express mental state consistent with the supreme court's holding in *Tenorio*. Thus, since 1994, the statute has provided as follows:

> A person commits the crime of [POWPO] if the person *knowingly* possesses, uses, or carries upon his or her person a firearm ... subsequent to the person's conviction for a felony....

§ 18–12–108(1) (emphasis added).

At trial, defendant testified that he assumed, and was under the impression that, his sentences on his two prior felony convictions

> were deferred sentences and that they would be dismissed; not necessarily ex-

punged or washed off the records, because that never goes away. A felony never goes away, it's always on the record.

He argued to the trial court that the prosecution was required under section 18–12–108(1) to prove that he had knowledge of his convicted felon status at the time he possessed the gun, and that, because he assumed his allegedly "deferred sentences" would be dismissed, he did not know in 2009 that he was still a convicted felon. The trial court rejected defendant's interpretation of the statute.

On appeal defendant contends, as he did at trial, that the express mens rea of "knowingly" in the amended POWPO statute applies to the prior felony conviction element of the offense, as well as to the possession of a weapon element. Accordingly, defendant contends the trial court erred by ruling that, as a matter of law, the statute did not require the prosecution to prove beyond a reasonable doubt his knowledge of his prior felony convictions; by instructing the jury in accordance with this ruling; and by prohibiting him from presenting evidence and arguing to the jury that he did not know of his convicted felon status at the time he possessed his gun. We perceive no error by the court.

■ Whether the mental state of an offense applies to a particular element of the offense is an issue of statutory construction that we review de novo. *See People v. Cross,* 127 P.3d 71, 73 (Colo.2006).

In construing a statute, our job is to effectuate the intent of the General Assembly. We look first to the plain text of a statute, reject interpretations that render words or phrases superfluous, and harmonize potentially conflicting provisions, if possible. We do not add or subtract statutory words that contravene the legislature's obvious intent. *Id.* We also consider the consequences of a particular construction and avoid constructions that produce illogical or absurd results. *Id.* at 74.

■ When, as here, a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears. § 18–1–503(4), C.R.S. 2011; *see also Copeland v. People,* 2 P.3d 1283, 1286 (Colo.2000) ("mens rea of a statute may speak to conduct, or to circumstances, or to result, or to any combination thereof, but not necessarily to all three"). Thus, under this rule of statutory construction and its exception, we carefully consider whether the General Assembly intended for a mental state to apply to every element or only certain elements of an offense. *Cross,* 127 P.3d at 74.

■ We conclude that the plain language of the amended POWPO statute evinces the General Assembly's clear intent for the "knowingly" mental state to apply only to the possession element of the offense, and not to the prior felony conviction element.

Initially, we observe that the term "knowingly" is placed immediately before the verb "possesses" to modify the possession element of the offense. However, the prior conviction element of the offense begins with the phrase "subsequent to," and not with a verb, which indicates to us that the term "knowingly" does not carry over to modify this element of the offense.

Moreover, the prior conviction element of the offense uses the term "conviction" which, when used without any reference to judgment, means merely the establishment of guilt by plea or verdict. *People v. Allaire,* 843 P.2d 38, 41 (Colo.App.1992) (citing *Hafelfinger v. Dist. Court,* 674 P.2d 375 (Colo.1984)) (the felony conviction element of section 18–12–108(1) is satisfied by proof of a guilty plea and deferred judgment; a judgment of conviction and sentencing are not required). In either instance—guilty plea or guilty verdict—a defendant will necessarily have knowledge of the conviction because he or she would have entered the plea or observed the jury's verdict. Thus, it is unnecessary to read the POWPO statute as applying the mental state of "knowingly" to the prior conviction element because such a construction would be superfluous. *See Cross,* 127 P.3d at 73–74.

Our conclusion that "knowingly" does not apply to the prior conviction element is reinforced by the purpose of the POWPO statute,

which is to limit the possession of firearms by persons whose past conduct has demonstrated their unfitness to be entrusted with such dangerous instrumentalities. *See People v. Montez*, — P.3d —, —, 2010 WL 961652 (Colo.App.2010) (*cert. granted* Nov. 8, 2010); *People v. Allen*, 111 P.3d 518, 520 (Colo.App.2004). The statute prohibits all convicted felons from possessing a firearm to avoid "substantial risk of harm to the public," *see Allen*, 111 P.3d at 520, and it would be inconsistent with this purpose to require proof of a defendant's knowledge of his or her convicted felon status before prohibiting the possession of a firearm.

Our conclusion is also in line with the supreme court's statement in *Tenorio*, 197 Colo. at 141, 590 P.2d at 955, that "[t]he prior conviction element of this crime is merely a fact to be proved at trial." Although the supreme court was not asked in *Tenorio* to address a defendant's knowledge of his or her prior conviction, it is instructive that the court made this statement alongside its express holding that the "knowingly" mental state applies to the possession element of the offense in the pre–1994 version of the statute. *Id.* at 144, 590 P.2d at 957.

For these reasons, it is clear to us that the General Assembly did not intend for the express mental state of "knowingly" in the amended POWPO statute to apply to the prior felony conviction element of the offense. *See Copeland*, 2 P.3d at 1285–87 (concluding that a statutory amendment adding an explicit mens rea to the conduct element of a crime that had previously been interpreted as a strict liability offense modified only the conduct element and not the remaining elements of the offense). Because we reach our conclusion based on a reading of the plain language of the statute, we decline defendant's request to apply the rule of lenity, which is a rule of last resort. *See People v. Thoro Prods. Co.*, 70 P.3d 1188, 1198 (Colo. 2003); *Hicks*, — P.3d at —.

While defendant's contention raises an issue of first impression in our state, appellate courts in states with similarly worded POWPO statutes have addressed this issue. These courts have consistently declined to apply the express mental state in the statute to the prior felony conviction element of the offense. *See People v. Adams*, 388 Ill.App.3d 762, 328 Ill.Dec. 232, 903 N.E.2d 892, 896–97 (2009) ("To prove this offense, the State must show that the defendant had a prior felony conviction and knowingly possessed a firearm."); *Rhone v. State*, 825 N.E.2d 1277, 1286–87 (Ind.Ct.App.2005) ("Contrary to [the defendant's] contention, [the statute] does not require proof that he knew he was a serious violent felon. Instead, the statute merely requires that a person knowingly or intentionally possess a firearm after having been convicted of a serious violent felony."); *State v. Johnson*, 128 Ohio St.3d 107, 942 N.E.2d 347, 354 (2010) ("In defining the offense, the General Assembly chose to specify a culpable mental state for the element of possession of a weapon, but it did not assign an additional mens rea for the additional elements of being under indictment or having been convicted.... As a result, ... the state is not required to prove a culpable mental state for [these elements]."); *Poole v. State*, 152 P.3d 412, 414 (Wyo.2007) ("The only mens rea requirement for a conviction is knowledge that the instrument possessed is a firearm. No requirement exists that the defendant know his status as a convicted felon." (citation omitted)).

Accordingly, we conclude the trial court did not err in its interpretation of the amended POWPO statute. Nor did the court err when it instructed the jury consistently with that interpretation, or when it prohibited defendant from presenting evidence and arguing at trial that he did not know that he was a prior convicted felon when he possessed his gun at the King Soopers.

## V. Other Contentions

■ Defendant contends his two POWPO convictions (which were based on the two different predicate felony convictions, but on the same King Soopers incident and the same gun) should merge. Although we reverse his convictions, this contention may arise on remand if defendant is charged and tried on the same two POWPO counts and if a jury again convicts him of both counts. In such an event, the People concede, and we agree, that the convictions should merge to

avoid a double jeopardy violation. *See People v. Abiodun,* 111 P.3d 462, 464–65 (Colo. 2005) (a defendant may not be convicted more than once for the same offense unless the legislature has chosen to permit it); *Montez,* —— P.3d at ——.

■ Defendant contends for the first time on appeal that the trial court abused its discretion by admitting two exhibits at trial without any redaction. According to defendant, these exhibits (which were the prosecution's proof of defendant's two prior felony convictions) included irrelevant and highly prejudicial information. In the event of a new trial, the prosecution will, of course, be required to introduce evidence of defendant's prior felony convictions. Nevertheless, we decline to address this final contention at this time because it is unlikely to arise on remand under the same set of circumstances—either the prosecution will redact the exhibits to avoid the issue altogether, or defendant will object to the unredacted exhibits at the new trial, and we will have an evidentiary ruling to review on any subsequent appeal.

■ Defendant also contends the trial court erred by permitting the prosecution to amend the complaint and information after the swearing in of the jury. We decline to address this contention because it is unlikely to arise on remand.

The judgment is reversed, and the case is remanded for a new trial consistent with this opinion.

Judge ROY and Judge J. JONES concur.