2014 CO 60

### The PEOPLE of the State of Colorado, Petitioner,

v.

### Joddy CARBAJAL, Respondent.

### Supreme Court Case No. 12SC235

Supreme Court of Colorado.

June 30, 2014

Attorney for Petitioner: John W. Suthers, Attorney General, John D. Seidel, Senior Assistant Attorney General, Denver, Colorado.

Attorneys for Respondent: Gradisar Trechter Rippe, David A. Roth, Pueblo, Colorado.

JUSTICE EID delivered the Opinion of the Court.

¶ 1 A search of the respondent Joddy Carbajal's residence led to the discovery of three firearms. Carbajal had previously been convicted of a felony, and was charged with three counts of Possession of a Weapon by a Previous Offender ("POWPO"). At trial, Carbajal raised as an affirmative defense that he possessed the weapons for the purpose of defending his home, person, and property. Over Carbajal's objection, the trial court modified the stock jury instruction regarding this affirmative defense and instructed the jury that Carbajal must have possessed the weapons to defend against what he "reasonably believed to be a threat of imminent harm." After deliberation, the jury convicted Carbajal of two of the three counts.

¶ 2 On appeal, Carbajal argued that the trial court incorrectly advised the jury of the law governing his affirmative defense. The court of appeals agreed, finding that the affirmative defense did not require a reasonable belief of a threat of imminent harm. The court further held that the inclusion of such a requirement in the jury instruction adversely affected Carbajal's substantial rights, and therefore reversed Carbajal's conviction. *People v. Carbajal*, 2012 COA 34, — P.3d —.

¶ 3 We now reverse. In *People v. Blue*, 190 Colo. 95, 104, 544 P.2d 385, 391 (1975), we held that the POWPO statute did not violate Article II, Section 13 of the Colorado Constitution, which protects a person's right to "keep and bear arms in defense of his home, person and property." As part of our reasoning, we observed that the legislature provided defendants an affirmative defense to a POWPO charge in the choice of evils statute, which would deem an offense not criminal "when it is necessary as an emergency measure to avoid *an imminent public or private injury*." 190 Colo. at 103, 544 P.2d at 391 (emphasis added) (citing § 18-1-702, C.R.S. (1973)). We find nothing in *People v. Ford*, 193 Colo. 459, 568 P.2d 26 (1977), from which the stock instruction is drawn, that altered *Blue*'s position that the affirmative defense to POWPO was grounded in the choice of evils statute. Accordingly, we conclude that the trial court did not err in instructing the jury that the "defendant possessed a firearm for the purpose of defending himself, home, or property from what he reasonably believed to be a threat of imminent harm."

I.

¶ 4 In September 2009, the Pueblo Police Department executed a valid search warrant at Carbajal's residence while investigating an unrelated case. During the search, detectives discovered three handguns. Because Carbajal had previously been convicted of vehicular assault, a felony in Colorado, he was charged with three counts of POWPO pursuant to section 18-12-108(1), (2)(a), C.R.S. (2013).

¶ 5 At trial, Carbajal claimed that he possessed the weapons in order to defend his home, person, and property. He presented evidence that he purchased the first firearm in May 2003 after an altercation at a bar led to a group of people driving by his home in a threatening manner, throwing a rock at his home's window, and breaking his truck window twice. Carbajal purchased the second firearm in June 2003 after he and his nephew were attacked and burglarized at gunpoint by two men who broke into his home. He

purchased a smaller third firearm in 2006 after moving into a new home so that his girlfriend would also have protection.

¶ 6 After presenting that evidence, Carbajal asked the trial court to instruct the jury on the affirmative defense to POWPO using the stock jury instruction. This instruction is based on the language in *Ford*, in which we determined that a POWPO defendant "who presents competent evidence showing that his purpose in possessing weapons was the defense of his home, person, and property thereby raises an affirmative defense." 193 Colo. at 462, 568 P.2d at 28. Mirroring this language, the stock instruction which Carbajal proposed reads as follows:

> It is an affirmative defense to the crime of possession of weapons by a previous offender that the defendant possessed the weapon for the purpose of defending his home, person, or property.

CJI–Crim. 7:63.

¶ 7 The People argued that the instruction should require that the defendant have a reasonable belief of a threat of imminent harm to his home, person, or property. They based their argument on *Blue*, in which we determined that the "choice of evils" affirmative defense, which justifies otherwise criminal conduct if it is "necessary as an emergency measure to avoid an imminent public or private injury," was the appropriate vehicle for guarding an unreasonable application of the POWPO statute. 190 Colo. at 103, 544 P.2d at 391. The trial court, while determining that the evidence was sufficient to raise the affirmative defense, nevertheless agreed with the People. Thus, over Carbajal's objection, it altered the stock instruction by adding the emphasized language, as follows:

> It is an affirmative defense to the charge of possession of a weapon by a previous offender that the defendant possessed a firearm for the purpose of defending himself, home, or property *from what he reasonably believed to be a threat of imminent harm.*

(Emphasis added.) Carbajal was subsequently convicted on two of the three POWPO counts.

¶ 8 On appeal, Carbajal argued that the trial court erred by not tendering the unmodified stock jury instruction. The court of appeals agreed, concluding that it was bound by *Ford*, from which the stock instruction was taken. *Carbajal,* ¶ 18. The court further determined that *Ford*, which "has been on the books for thirty-four years," preserves a POWPO defendant's right to possess a weapon in defense of his home, person, and property. *Id.* The court of appeals therefore held that the trial court erred by modifying the stock jury instruction to include language concerning a reasonable belief of a threat of imminent harm. *Id.* at ¶ 4. This modification, the court further held, impacted Carbajal's substantial rights and impermissibly lowered the prosecution's burden of proof, requiring that Carbajal's conviction be reversed. *Id.* at ¶ 22. Judge Richman specially concurred, concluding that the stock instruction for the affirmative defense to POWPO should include a requirement of a "reasonable belief of a threat of harm," *id.* at ¶ 32, but not of a threat of "imminent harm," *id.* at ¶ 29.

¶ 9 The People then petitioned this court for certiorari review of the court of appeals' decision.[1] We now reverse.

## II.

¶ 10 It is the duty of the trial court to "correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions." *Cassels v. People,* 92 P.3d 951, 955 (Colo.2004). We review de novo the question of whether a jury instruction accurately informed the jury of the governing law. *Day v. Johnson,* 255 P.3d 1064, 1067 (Colo.2011).

¶ 11 In order to determine whether the trial court properly instructed the jury regarding Carbajal's affirmative defense to

1. We granted certiorari to review the following issue:

> Whether any affirmative defense to Possession of a Weapon by a Previous Offender must have, as an element, a reasonable belief of a threat of imminent harm.

POWPO, we begin by examining our cases that bear on the subject, *Blue* and *Ford*.

¶ 12 In *Blue*, the defendants argued that Colorado's POWPO statute[2] violated Article II, Section 13 of the Colorado Constitution, which instructs that:

> The right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons.[3]

We rejected the defendants' constitutional challenge, and instead held that the POWPO statute was a valid exercise of the state's police power to "limit[ ] the possession of guns and other weapons by persons who are likely to abuse such possession." 190 Colo. at 103, 544 P.2d at 391. Especially relevant to this case, we observed that "our view does not abrogate [a previous offender's] right to legitimately use self-defense." *Id.* We then stated that the POWPO statute "must be read in [p]ari materia with" the statute permitting a choice of evils defense, which provides that "conduct which would otherwise constitute an offense is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury." *Id.* (citing § 18–1–702, C.R.S. (1973)).[4] We concluded that the defendants failed to raise such an affirmative defense, as they "have not contended that they were armed because of any threat to their lives or in order to defend their homes or property." *Id.* Thus, in *Blue*, we determined that POWPO, when read in conjunction with the choice of evils statutory defense, survived constitutional scrutiny.

¶ 13 Two years later, this Court decided *Ford*. There, the trial court granted the defendant's motion to dismiss the POWPO charge because it determined, based on testimony presented at a hearing, that the defendant had shown that he had kept the firearm to protect his home, person and property. 193 Colo. at 461, 568 P.2d at 28. On appeal to this court, the People argued that the affirmative defense should be decided by a jury, rather than by the judge. We agreed. After referencing *Blue*, we observed that "[a] defendant charged under [the POWPO statute] who presents competent evidence showing that his purpose in possessing weapons was the defense of his home, person, and property thereby raises an affirmative defense." 193 Colo. at 462, 568 P.2d at 28. Because "the ultimate issue [of] whether an affirmative defense applies turns solely on the fact issue of the defendant's purpose in keeping the guns," we concluded that the applicability of the affirmative defense should be decided by the jury, not the judge. 193 Colo. at 462, 568 P.2d at 29.

¶ 14 The question in this case is thus a narrow one, requiring us to determine whether *Ford* altered *Blue*'s rationale that the affirmative defense to POWPO be grounded in the choice of evils statute. We conclude that it did not.

¶ 15 In assessing the constitutionality of POWPO in *Blue*, we stated that the statute "must be read in [p]ari materia with" the choice of evils statute, which would provide an affirmative defense where a defendant could show that his possession of a firearm was "necessary as an emergency measure to avoid an imminent public or private injury." 190 Colo. at 103, 544 P.2d at 391 (citing § 18–1–702, C.R.S. (1973)). In other words, the legislature's provision of a choice of evils defense was important to our conclusion that POWPO passed constitutional muster. We

---

2. The current version of the POWPO statute states that "[a] person commits the crime of possession of a weapon by a previous offender if the person knowingly possesses, uses, or carries upon his or her person a firearm ... subsequent to the person's conviction for a felony...." While the language defining the substantive offense has not changed since *Blue*, the current statute applies to all previous felony convictions, not just to burglary; arson; or a felony involving the use of force, violence, or a deadly weapon, as in *Blue*. 190 Colo. at 98, 544 P.2d at 387.

3. The constitutional challenge was limited to a claim that the POWPO statute violates Article II, Section 13 of the Colorado Constitution. Neither *Blue* nor this case concerns the Second Amendment to the United States Constitution.

4. The current version of the choice of evils statute reproduces verbatim the language from the 1973 version of the statute.

went on in the next paragraph to state that the defendants could raise as an affirmative defense that they "were armed because of [a] threat to their lives or in order to defend their homes or property." *Id.* We therefore contemplated that such a defense would be brought pursuant to the choice of evils statute, which required (and still requires) a showing of a threat of imminent harm.

¶ 16 Nothing in *Ford* suggests that we altered this approach a mere two years later. The court of appeals focused on *Ford*'s language stating that a POWPO defendant "who presents competent evidence showing that his purpose in possessing weapons was the defense of his home, person, and property *thereby raises an affirmative defense.*" *Carbajal,* ¶ 13 (emphasis in original) (quoting *Ford,* 193 Colo. at 462, 568 P.2d at 28). Yet there we merely repeated our language from *Blue* that in order to raise an affirmative defense, defendants must "contend[ ] that they were armed because of any threat to their lives or in order to defend their homes or property." 190 Colo. at 103, 544 P.2d at 391. The same is true of our statement in *Ford* that the defense is to be determined "solely on the fact issue of the defendant's purpose in keeping the guns." 193 Colo. at 462, 568 P.2d at 29. Again, this statement is entirely consistent with our position in *Blue* that the defendants must contend that they were armed "because of [a] threat to their lives or in order to defend their homes or property" in order to raise the affirmative defense. 190 Colo. at 103, 544 P.2d at 391. We simply had no occasion in Ford to address the vehicle chosen by the legislature through which defendants could express those contentions—namely, the choice of evils defense.

¶ 17 Judge Richman, in his special concurrence, noted that the right embodied in Article II, Section 13 is a right to defend one's home, person, and property—not simply a right to defend against imminent harm to those things. *Carbajal,* ¶ 29 (Richman, J., specially concurring). Like the majority of the court of appeals, however, Judge Richman' s position fails to take into account our reasoning in *Blue,* which was that the choice of evils defense was the legislature's way of preserving that constitutional right in connection with POWPO.

¶ 18 Judge Richman also suggested that he would require that a defendant possess a "reasonable belief of a threat of harm" (but not of imminent harm) in order to establish the affirmative defense. *Id.* at ¶ 32. He adopted this position because "[t]he absence of a requirement of a 'reasonable belief' in the stock instruction permits the affirmative defense to be asserted whenever a POWPO defendant claims that his 'purpose' in possessing the weapon was for defense, no matter how unreasonable or unjustified that claim might be." *Id.* He further justified the reasonableness requirement on the ground that many similar statutory affirmative defenses avoid this problem because they contain a reasonableness requirement. *Id.* at ¶ 33. There is no reason to look to other statutory affirmative defenses, however, given that we already contemplated the use of the choice of evils defense in *Blue*—which, in fact, contains a reasonableness as well as an imminence requirement. *See People v. Strock,* 623 P.2d 42, 44 (Colo.1981) ("Before the choice of evils defense may be invoked, it must first be shown that the defendant's conduct was necessitated by a specific and imminent threat of injury to his person under circumstances which left him no reasonable and viable alternative other than violation of the law.").

¶ 19 Carbajal's primary argument against the choice of evils defense is a practical one. He argues that once a particular threat to one's home, person, or property becomes imminent, it will be too late to obtain a firearm to protect against it. We acknowledged in *Blue* that the General Assembly "cannot, in the name of the police power, enact laws which render nugatory our Bill of Rights and other constitutional protections." 190 Colo. at 103, 544 P.2d at 391. At the same time, however, we recognized that the POWPO statute, when "read in [p]ari materia" with the choice of evils statute, "does not abrogate [a previous offender's] right to legitimately use self-defense." *Id.* Nothing in *Ford* altered this rationale.

¶ 20 In the end, if we were to endorse the unmodified stock instruction, as Carbajal

asks us to do, we would give little effect to the legislature's intent in passing POWPO. Indeed, without reasonableness or imminence requirements, POWPO defendants receive the benefit of the affirmative defense by simply stating that that they possessed a weapon to defend their home, person, or property; the stock instruction requires nothing more. Such an instruction eradicates any distinction between POWPO defendants and ordinary citizens, effectively nullifying POWPO. We have already recognized in *Blue* that the legislature properly accommodated Article II, Section 13 by permitting a POWPO defendant to take advantage of the choice of evils defense. We decline Carbajal's invitation to upset that balance.

■ ¶ 21 In sum, we hold that under *Blue* and *Ford*, the POWPO affirmative defense is the statutory defense of choice of evils. Accordingly, we hold that the trial court did not err in modifying the stock jury instruction to state that that "[i]t is an affirmative defense to the charge of [POWPO] that the defendant possessed a firearm for the purpose of defending himself, home, or property from what he reasonably believed to be a threat of imminent harm." [5]

### III.

¶ 22 For these reasons, we reverse the court of appeals.

JUSTICE HOOD dissents, and JUSTICE HOBBS joins in the dissent.

JUSTICE HOOD, dissenting.

¶ 23 Because I find no "reasonable fear of imminent harm" requirement in the Colorado Constitution or *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975), and *People v. Ford*, 193 Colo. 459, 568 P.2d 26 (1977), I respectfully dissent from the majority's opinion.

¶ 24 "The right of no person to keep and bear arms in defense of his home, person and property ... shall be called in question." Colo. Const. art. II, § 13. In *Ford*, we held that "[a] defendant charged under [the POWPO statute] who presents competent evidence showing that his *purpose in possessing weapons was the defense of his home, person, and property* thereby raises an affirmative defense." 193 Colo. at 462, 568 P.2d at 28 (emphasis added).

¶ 25 Although *Ford* references *Blue*, nowhere in *Ford* did we so much as mention the choice of evils statute.[1] Nor did we hold that that affirmative defense has an explicit or implicit "reasonable fear of imminent harm" requirement.

¶ 26 Relying on dicta in *Blue*, the majority nonetheless holds that "the affirmative defense to POWPO [is] grounded in the choice of evils statute" and thus contains such a requirement. Maj. op. ¶ 3. But Carbajal's affirmative defense is grounded in article II, section 13 of the Colorado Constitution, not *Blue*'s dicta.

¶ 27 Carbajal was charged and convicted under the POWPO statute, § 18–12–108(1), C.R.S. (2013), which reads: "A person commits the crime of possession of a weapon by a previous offender if the person knowingly possesses, uses, or carries upon his or her person a firearm ... subsequent to the person's conviction for a felony." Unlike older versions of this statute—which applied only to a person "previously convicted of burglary, arson, or a felony involving the use of force or violence or the use of a deadly weapon," and only for the ten years following the conviction or release from incarceration[2]—the current statute is extremely broad. On its face, it prohibits *anyone* convicted of *any* felony from *ever* possessing a firearm. Therefore, the current version of the statute

---

5. The choice of evils defense also requires that the conduct in which the defendant was engaged be necessary to avoid a harm "which is about to occur by reason of a situation occasioned or developed through no conduct of the [defendant]." § 18–1–702(1). The instruction in this case did not explain this requirement to the jury. To the extent that omitting this element of the defense was error, however, it inured to Carbajal's benefit.

1. The choice of evils statute excuses otherwise criminal behavior that is "necessary as an emergency measure to avoid an imminent public or private injury." § 18–1–702(1), C.R.S. (2013).

2. § 18–12–108, C.R.S. (1973).

implicates the rights of a much larger class of Colorado citizens.

¶ 28 In *Blue*, we addressed the facial constitutionality of the POWPO statute. The defendant challenged his POWPO conviction under article II, section 13. In resolving this conflict between an individual's right to bear arms and the state's power to regulate for public health and safety, we recognized that the right to bear arms is not absolute. *Blue*, 190 Colo. at 103, 544 P.2d at 391. Article II, section 13's language limits its application to defense of home, person, and property. We held that POWPO is a legitimate use of police power and not an attempt to subvert article II, section 13, and thus not facially unconstitutional. *Id.*

¶ 29 But in *Blue*, we went on to reason that, because "the state legislature cannot, in the name of the police power, enact laws which render nugatory our Bill of Rights and other constitutional protections," there are times when POWPO must yield to the right to bear arms. *Id.* As an example, we noted that *Blue*'s holding did not "abrogate an ex-felon's right to legitimately use self-defense." *Id.* In the context of self-defense, POWPO must be read "in [p]ari materia" with the choice of evils statute, section 18–1–702, which provides that "conduct which would otherwise constitute an offense is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury." [3] *Id.* This example is dicta, not controlling legal reasoning.

¶ 30 While the choice of evils statute is one way to reconcile POWPO with article II, section 13, it is not the only way. Significantly, in *Blue*, we neither reached nor decided the issue of whether an affirmative de-

fense raised under article II, section 13 must necessarily include applying the choice of evils statute's "imminent public or private injury" requirement. We even noted that "[d]efendants have not contended that they were armed because of any threat to their lives or in order to defend their homes or property. This could be a defense against unreasonable application of the statute, but is not involved in this case." *Id.* at 103–04, 544 P.2d at 391; *see also Ford*, 193 Colo. at 461, 568 P.2d at 28 ("[T]he court in *Blue* left unanswered the question whether such a defense, if established, would render unconstitutional the statute's application in a particular case.").

¶ 31 Two years after *Blue*, we squarely addressed the extent to which POWPO is limited by article II, section 13 in *Ford*. We held that the statute's "flat prohibition" on possession of firearms by convicted felons is subject to article II, section 13's right to "keep and bear arms in defense of . . . home, person, and property." *Id.* at 462, 568 P.2d at 28. This constitutional right anticipates ongoing possession of a firearm, not merely its actual use.[4]

¶ 32 Furthermore, as the majority acknowledges, but summarily dismisses, "once a particular threat to one's home, person, or property· becomes imminent, it will be too late to obtain a firearm to protect against it" under today's holding. Maj. op. ¶ 19. Imposing an "imminent harm" requirement nullifies article II, section 13's guarantee of the right to *keep* arms in defense of home, person, and property. This outcome is inconsistent with our holdings in *Blue* and *Ford*.

¶ 33 If the majority wishes to reject the doctrine of stare decisis and overrule *Ford*, it should more plainly say so.[5]

3. The text of section 18–1–702 has not changed since *Blue*.

4. A defendant's use of physical force or other unlawful act may give rise to an affirmative defense of self-defense or choice of evils, both of which require that the defendant's action was in response to his fear of imminent harm. *See* § 18–1–704(1), C.R.S. (2013) (excusing physical force used to defend against another's "imminent use of unlawful physical force"); § 18–1–702(1) (excusing otherwise unlawful actions carried out in response to "imminent public or private inju-

ry"). In contrast, a POWPO violation does not necessarily involve using a gun, using physical force, or committing any unlawful act other than keeping a firearm. That is, knowing possession of a firearm by a convicted felon is enough to sustain a POWPO conviction. This case is the perfect example, given that police discovered Carbajal's guns while searching his home during an unrelated investigation.

5. *See Smith v. Dist. Court in & for Fourth Judicial Dist.*, 907 P.2d 611, 612 (Colo.1995) (stare decisis "should be adhered to in the absence of

¶ 34 For the reasons above, I respectfully dissent from the majority opinion.

I am authorized to state that JUSTICE HOBBS joins in the dissent.

sound reason for rejecting it"); *Kern v. Gebhardt,* 746 P.2d 1340, 1345 (Colo.1987) (considerations of "uniformity, certainty, and stability" militate against reversing settled law).