COLORADO COURT OF APPEALS                                      2017COA92

Court of Appeals No. 10CA1476
City and County of Denver District Court No. 09CR510
Honorable Robert L. McGahey, Jr., Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sandra L. Jacobson,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE WEBB
Navarro and Kapelke*, JJ., concur

Announced July 13, 2017

Cynthia H. Coffman, Attorney General, Rebecca A. Jones, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Andrew C. Heher, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     The general background appears in *People v. Jacobson*, 2014 COA 149 (*Jacobson I*), which reversed defendant's conviction for failure to poll the jury about exposure to extraneous, prejudicial information.  In *People v. Jacobson*, 2017 CO 28 (*Jacobson II*), the supreme court reversed *Jacobson I* and remanded the case to us, albeit without direction.

¶ 2     Before our mandate was issued, defendant, Sandra L. Jacobson, asked us to decide two issues that had not been resolved in *Jacobson I*.  She correctly pointed out that either of these issues could lead to reversal of the judgment of conviction entered on jury verdicts finding her guilty of vehicular homicide, driving under the influence (DUI), and other related charges, arising from a collision between her truck and a taxi cab on Pena Boulevard.

¶ 3     We granted her request but now affirm the judgment of conviction.

## I.  The Trial Court Did Not Err in Failing Sua Sponte to Instruct the Jury on the Statutory DUI Affirmative Defense of Having Consumed Alcohol Between the Time Defendant Stopped Driving and the Blood Alcohol Content (BAC) Testing Occurred

### A.  Additional Background

¶ 4     Defendant testified at trial.  She described herself as having been "stone cold sober" when the accident occurred at about 10:30 a.m.  But she said that on arrival at the Denver International Airport's cargo terminal some fifteen minutes later, she drank a Vitamin Water bottle that contained one-half 99 proof schnapps.

¶ 5     Two police officers contacted defendant at 10:58 a.m.  Neither noticed any indicia of alcohol intoxication.  Although defendant remained in police custody and interacted with other officers, not until about 3:00 p.m. did an officer notice bloodshot, watery eyes, and slurred speech.  This officer administered a roadside sobriety test, which defendant failed.  Then he took her to a hospital for a blood draw.

¶ 6     Samples were taken at 3:55 p.m., 5:00 p.m., and 6:01 p.m.  The test results showed that her BAC was .164, .143, and .121, respectively.  Based on these results, the prosecution presented

expert testimony that defendant's BAC had been .274 at the time of the accident.

¶ 7     Defense counsel did not request the trial court to instruct the jury on the DUI affirmative defense of having consumed alcohol between the time that she stopped driving and when the testing occurred.

## B.  Standard of Review and Law

¶ 8     Where a defendant did not request an affirmative defense instruction, review is limited to plain error.  *See, e.g., People v. Griffin*, 224 P.3d 292, 298 (Colo. App. 2009).  Plain error permits an appellate court "to correct particularly egregious errors."  *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987).  The error must be "'so clear-cut, so obvious,' a trial judge should be able to avoid it without benefit of objection."  *People v. Ujaama*, 2012 COA 36, ¶ 42 (quoting *People v. Taylor*, 159 P.3d 730, 738 (Colo. App. 2006)).

¶ 9     Even then, an appellate court will reverse only if a defendant shows "that the court committed an obvious and substantial error that undermined the fundamental fairness of the trial so as to cast serious doubt on the reliability of the judgment of conviction."  *Griffin*, 224 P.3d at 298.  To be sure, reversals under plain error

"must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time." *Hagos v. People*, 2012 CO 63, ¶ 23.

¶ 10     "We review de novo the question of whether a jury instruction accurately informed the jury of the governing law." *People v. Carbajal*, 2014 CO 60, ¶ 10.  "It is the duty of the trial court to 'correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions.'" *Id.* (quoting *Cassels v. People*, 92 P.3d 951, 955 (Colo. 2004)).

¶ 11     Section 42-4-1301(1)(a), C.R.S. 2016, defines DUI.  According to section 42-4-1301(2)(a),

> if a defendant presents some credible evidence, that the defendant consumed alcohol between the time that the defendant stopped driving and the time that testing occurred, such issue *shall be an affirmative defense*, and the prosecution must establish beyond a reasonable doubt that the minimum 0.08 blood or breath alcohol content required in this paragraph (a) was reached as a result of alcohol consumed by the defendant before the defendant stopped driving.

(Emphasis added.)  The parties have not cited a case, nor have we found one, interpreting this language.

¶ 12    Despite this dearth of precedent, the following uncontroverted authorities are informative.

- "[P]roof of vehicular homicide under section 18-3-106(1)(b)(I) required proof that defendant operated a vehicle while under the influence of alcohol or drugs, or a combination thereof." *People v. Grassi*, 192 P.3d 496, 500 (Colo. App. 2008).

- "[T]o present an affirmative defense for jury consideration, the defendant must present 'some credible evidence' on the issue involving the claimed defense." *People v. Garcia*, 113 P.3d 775, 783-84 (Colo. 2005) (citing § 18-1-407, C.R.S. 2016).

- Whether a defendant has met this burden is a question of law, subject to de novo review. *Id.*

- "Whatever questions may remain in federal law concerning precisely when an affirmative defense 'controverts,' or 'does negate' an element of an offense, long before the federal constitution was construed to impose limitations on the common law rule requiring criminal defendants to prove affirmative defenses, we in this jurisdiction interpreted the state due process clause to do so." *Montoya v. People*, 2017 CO 40, ¶ 24.

¶ 13     On this much, the parties largely agree.  As to the intersection between plain error and omission of a statutory affirmative defense, however, they differ.  But we decline to resolve that difference because we conclude that the trial court did not err in failing sua sponte to instruct on the statutory affirmative defense.

## C.  Discussion

¶ 14     To begin, the Attorney General asserts that defendant invited any error.  The sole bases for this assertion are defense counsel's request for "an affirmative defense instruction based on intervening cause," which was not given, and his later statement to the trial court that he did not request any further instructions.  But the possibility of instructing on the statutory affirmative defense had never been discussed.  Without more, we cannot apply invited error. *See People v. Stewart*, 55 P.3d 107, 119 (Colo. 2002) (holding, where defense counsel had tendered one instruction but not another, "a nontactical instructional omission generally should be reviewed for plain error").

¶ 15     The Attorney General does not dispute that defendant presented sufficient evidence to warrant an instruction on the affirmative defense.  And with good reason.  The burden to produce

sufficient evidence is "exceedingly low," making preclusion of an affirmative defense appropriate only when there is "simply no evidence . . . in th[e] record." *People v. Platt*, 170 P.3d 802, 806 (Colo. App. 2007), *aff'd*, 201 P.3d 545 (Colo. 2009). The "scintilla of evidence" standard is so low that "the evidence necessary to justify an affirmative defense instruction may come solely from the defendant's testimony, even if the evidence is improbable." *People v. Johnson*, 2013 COA 122, ¶ 35.

¶ 16    Instead, according to the Attorney General, "by proving the elements of vehicular homicide (DUI) beyond a reasonable doubt, the prosecution also disproved the affirmative defense beyond a reasonable doubt." Specifically, the Attorney General points to Instruction No. 8 (the elemental instruction on DUI), which required the prosecution to prove, among other elements, that defendant,

> (3) operated or drove a motor vehicle,
>
> (4) while under the influence of any drug or intoxicant, and
>
> (5) such conduct is the proximate cause,
>
> (6) of the death of another.

Thus, the Attorney General continues, by proving that defendant "was intoxicated at the time of the accident," the prosecution

7

"necessarily disproved the affirmative defense that the defendant did not become intoxicated until a later time."

¶ 17    No authority is cited to support this analysis.  But since the briefing closed, our supreme court said in *Montoya*, ¶ 29,

> our entire rationale in [*People v. Pickering*, 276 P.3d 553 (Colo. 2011)] is premised on the well-established proposition that a defense operating solely by traversing, or negating, elements of the crime itself is disproved, at one and the same time, by proving those elements. *See, e.g.,* [*People v. Huckleberry*, 768 P.2d 1235, 1238-39 (Colo. 1989)] (holding that a defense of alibi does not merit an affirmative defense instruction because proof that the defendant committed the crime itself necessarily disproves the defendant's assertion that he was somewhere else).

This statement informs our analysis in two ways.

¶ 18    First, it undercuts defendant's reliance on *Pickering* in her reply brief.[1]  Second, the reference to *Huckleberry* shows why the

---

[1] Defendant's citation to *People v. Garcia*, 113 P.3d 775 (Colo. 2005), and *Vega v. People*, 893 P.2d 107 (Colo. 1995), are also unavailing.  In *Garcia*, the trial court had ruled before trial that hypoglycemia could not support the defendant's affirmative defense of involuntary intoxication, thereby precluding the supreme court from determining whether the trial record supported giving an affirmative defense instruction.  In *Vega*, the supreme court held that the special offender statute is not a substantive offense to which an affirmative defense is available.

statutory characterization of "an affirmative defense" is not dispositive.

¶ 19     In *Huckleberry*, 768 P.2d at 1239, the court explained,

> the essence of an affirmative defense is the admission of the conduct giving rise to the charged offense.  Having acknowledged presence at and participation in the event, the participant in effect justifies the conduct on grounds deemed by law to be sufficient to render the participant exempt from criminal responsibility for the consequences of the conduct.  The People are required to negate an affirmative defense because such defense raises factors justifying the defendant's conduct to a parity with the elements of the offense. . . .  The defense of alibi does not require proof or disproof of factual issues beyond those necessary to establish the elements of the offense charged. . . .  No special instructions are necessary to inform the jury of the People's burden to prove that a defendant alleged to have committed an offense did commit that offense.

*Compare People v. Marks*, 2015 COA 173, ¶ 57 ("The same is true of an alternate suspect defense."), *with People v. Grizzle*, 140 P.3d 224, 226 (Colo. App. 2006) ("A defendant must admit to having engaged in the proscribed conduct to be entitled to an entrapment instruction.").

¶ 20    By any fair reading of the record, defendant never admitted the criminality of her conduct.  Just the opposite — she attested to her sobriety when the accident occurred.

¶ 21    Even so, the *Huckleberry* court went on to point out,

> [a]lthough the General Assembly has expressly recognized several affirmative defenses, the defense of alibi has not been established by statute.  We reject Huckleberry's argument that the affirmative defense statute . . . encompasses the defense of alibi even though such defense is not specified by any statute.

768 P.2d at 1239 (footnote omitted).  So, is *Huckleberry* controlling here, where the statute says that "such issue shall be an affirmative defense"?  We conclude that it is, despite this difference.

¶ 22    Thus, we decline to treat the statutory mandate as trumping the broader principle — explained in *Huckleberry* and reiterated in *Montoya* — that an affirmative defense instruction need not be given where the defense is only an element-negating traverse.  As the division in *People v. Nelson*, 2014 COA 165, ¶ 52, noted,

> [w]e acknowledge that the General Assembly has, paradoxically, characterized consent of the victim as an "affirmative defense" if "the consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense." § 18-1-505(1), C.R.S. 2014; *see*

10

> *People v. Bush*, 948 P.2d 16, 19-20 (Colo. App.
> 1997) (Briggs, J., specially concurring) (opining
> that where consent and mistake of fact merely
> negate an element of the crime charged, they
> are not truly affirmative defenses,
> notwithstanding section 18-1-505).  But even
> were we to regard consent and mistake of fact
> as affirmative defenses under the facts of this
> case, it would not follow that defendant was
> entitled to separate instructions on those
> defenses.  Where proof of the elements of the
> charged offense necessarily requires disproof of
> the issue raised by the affirmative defense, a
> separate instruction on that defense need not
> be given.

¶ 23    In sum, because we discern no error in the trial court's failure

to instruct the jury sua sponte on the statutory affirmative defense,

we need not consider the other plain error factors.  *See People v.*

*Ortiz*, 2016 COA 58, ¶ 23 ("Because the district court did not err, we

need not address the other elements of plain error analysis.").

### II.  Jury Instruction No. 15 and the Court's Answer to a Related Jury Question Do Not Require Reversal

¶ 24    For the first time on appeal, defendant contends that Jury

Instruction No. 15 and the court's response to a related jury

question reduced the prosecution's burden.  As a result, defendant

continues, the Attorney General's position that by proving the

elements of the offense beyond a reasonable doubt, the prosecution

necessarily disproved the affirmative defense, (which we accepted in the prior section of this opinion), is flawed. Although with somewhat less clarity, defendant also contends that the instruction created a constructive amendment or a simple variance that prejudiced her. We reject the first contention and conclude that invited error bars review of the second contention.

## A. Additional Background

¶ 25    Instruction No. 15 explained that "the amount of alcohol in the Defendant's blood at the time of the commission of the offense, or within a reasonable time thereafter, as shown by chemical analysis of the Defendant's blood or breath, gives rise to the following . . . ." Then it set forth the various statutory presumptions.

¶ 26    During deliberations, the jury asked, as to the DUI verdict form, "is this specific to the time of the collision, at or around 10:30 a.m., or at any time thereafter (on or around the time she was stopped by the police at 10:58 a.m.)?" After discussion with counsel, the court answered, "It can be either or both, but any decision you make concerning the particular time must be unanimous."

## B. Effect of Instruction No. 15 and the Answer to the Jury Question on Failure Sua Sponte to Give the Statutory Affirmative Defense Instruction

### 1. Preservation

¶ 27    Defense counsel did not object to Instruction No. 15 and participated in the trial court's formulating an answer to the jury question. On these bases, the Attorney General asserts that defendant invited any error. We resolve the invited error question as to a constructive amendment or a simple variance in the next section of this opinion.

¶ 28    But as for this section, invited error becomes "a convoluted chicken-egg argument." *Widefield Water & Sanitation Dist. v. Witte*, 2014 CO 81, ¶ 26. We have concluded that defendant did not invite the alleged error in the trial court's failure to give the statutory affirmative defense instruction, but merely failed to request that this instruction be given. So, if the affirmative defense instruction was not even contemplated, much less argued, how could we apply invited error to preclude defendant from now arguing that such an instruction was necessary based on Instruction No. 15 and the answer to the jury question?

¶ 29    We escape this dilemma by declining to apply invited error at this level of the analysis because defendant does not argue that Instruction No. 15 and the answer to the jury question incorrectly stated the law.  Thus, invited error does not prevent our reconsidering whether the jury should have been instructed on the statutory affirmative defense because Instruction No. 15 and the court's answer to the jury's question could have reduced the prosecution's burden.

### 2.  Law

¶ 30    "In any prosecution for DUI or DWAI, the defendant's BAC or drug content at the time of the commission of the alleged offense or within a reasonable time thereafter gives rise to the following presumptions or inferences."  § 42-4-1301(6)(a).

¶ 31    In *Charnes v. Boom,* 766 P.2d 665, 669 (Colo. 1988), the supreme court explained, "the relevance of the results of a chemical test in a criminal trial . . . is not limited to tests conducted within one hour after the alleged offense.  Instead, such test results may be admissible and provide significant evidence if obtained within a reasonable time after the alleged offense, even if that time exceeds one hour."   More recently, in *People v. Wehmas,* 246 P.3d 642, 650

14

(Colo. 2010), the court noted that while a "delay in obtaining a BAC will lead to a gradual loss of perhaps the strongest evidence of a defendant's BAC at the time of the offense because of the ongoing metabolism of alcohol . . . expert testimony can be used to otherwise analyze and extrapolate a person's BAC to provide an opinion as to the BAC at the time of the offense."

¶ 32    Yet, neither the supreme court nor any division of this court has looked at "a reasonable time after" driving through the lens of whether allowing a jury to determine guilt based on such evidence of the BAC unfairly reduces the prosecution's burden.  Defendant cites no authority supporting this proposition, from Colorado or elsewhere.

¶ 33    In *People v. Emery*, 812 P.2d 665, 667 (Colo. App. 1990), however, the division explained, "the prosecution presented evidence that approximately three hours after the accident, defendant's blood alcohol level was above the statutory percentage. From that evidence, the jury could infer that defendant was under the influence at the time of the offense."  The division concluded, "defendant's blood alcohol level was, within a reasonable time after

15

the accident, sufficient to permit an inference that he was under the influence when the accident occurred." *Id.* at 668.

### 3.  Discussion

¶ 34      Defendant's assertion that Instruction No. 15 encouraged the jury to convict based on her intoxication "a reasonable time after," as opposed to at the time of the accident, runs head long into Instruction No. 8, quoted above.  Defendant does not challenge this instruction.  And it required the prosecution to prove that defendant had been intoxicated when the accident occurred.  In contrast, Instruction No. 15 dealt with the inferences that could be drawn from results of the BAC tests, not the elements of the offense.

¶ 35      But the possibility that the answer to the jury question undercut Instruction No. 8 and thereby reduced the prosecution's burden warrants a closer look.  After all, based on the answer, the jury could have convicted defendant by unanimously agreeing on her intoxication as of 10:58 a.m., approximately one-half hour after the collision.  Still, for three reasons, this possibility does not change our conclusion that the prosecution's proof also disproved the affirmative defense.

16

¶ 36     First, consistent with *Charnes* and *Wehmas*, the prosecution presented expert testimony that based on the trending in defendant's BAC when her blood was drawn three separate times, several hours after the collision, her BAC had been .274 at the time of the accident.  Defendant does not explain, nor can we discern, how she could have been heavily intoxicated at 10:58 a.m. — if that is the time on which the jury agreed — but not been intoxicated when the collision occurred at 10:30 a.m.  And the process whereby the expert arrived at the .274 opinion precludes this conclusion.

¶ 37     Second, defendant also does not discuss how her testimony that she consumed an alcoholic beverage around 10:45 a.m. — but not before the collision — would neutralize the expert's opinion that her BAC had been .274 at the time of the accident.  To the contrary, the prosecution's expert opined that "chugging" significant amounts of an alcoholic beverage at 10:45 would not explain the results of the three blood draws, given the time between them and the rate the body metabolizes alcohol.

¶ 38     Third, to the extent that defendant implies 10:58 a.m. is more than a reasonable time after 10:30 a.m., *Emery* holds otherwise.

And as for a jury's ability to determine reasonableness, the word "reasonable" appears in numerous Colorado criminal statutes.[2]

¶ 39 Given all this, the answer to the jury question does not lead us to reconsider whether the prosecution disproved the statutory affirmative defense.

### C. Constructive Amendment and Simple Variance

¶ 40 The precise difference between this contention and defendant's affirmative defense contention is unclear. But defendant could be understood as raising a separate argument based on a temporal discrepancy between the charging document and the references to "a reasonable time after" in Instruction No. 15, coupled with the trial court's response to the jury question. If so, invited error bars review.

### 1. Preservation and Standard of Review

¶ 41 Defendant concedes that she did not raise this issue below, but urges plain error review. The Attorney General responds that

---

[2] *See, e.g.*, § 18-9-305, C.R.S. 2016 ("if reasonable notice of the use of such devices is given to the public"); § 18-12-108.7, C.R.S. 2016 ("fails to make reasonable efforts to prevent such violation"); § 18-1-705, C.R.S. 2016 ("using reasonable and appropriate physical force upon another person"); § 18-18-420, C.R.S. 2016 ("would lead a reasonable person to believe that the substance is the controlled substance that it is purported to be").

defendant invited any error.  We now address invited error because it could obviate further analysis of a constructive amendment and a simple variance.

¶ 42    During the instruction conference, defense counsel raised Instruction No. 15.  The prosecutor interjected that defense counsel, "had suggested to me, and I think that I agree, that this presumption instruction would apply to both vehicular homicide and the DUI charges" instead of having separate instructions.  After defense counsel responded, "I'm good with that," the court added that the change would be made.  As given to the jury, the instruction referred to "any prosecution in which the defendant is charged with Vehicular Homicide *and/or* Driving under the Influence."  (Emphasis added.)

¶ 43    At the end of the conference, the court asked the prosecutor about any objections and then asked defense counsel:

> I'm going to ask you the same questions.
> You've been given seventeen jury instructions
> and nine forms of verdict.  Do you have any
> objections to those verdict forms and jury
> instructions other than as was expressed in
> chambers?

Both counsel answered "no."

¶ 44    Turning to the jury question, the court, the prosecutor, and defense counsel discussed how to answer it at length. The court expressed concern over unanimity because "we can't have six of them deciding that it's 10:30 and six of them deciding it's 10:58 and finding 'you're guilty.'" After the court posited possible unanimity language, the following colloquy occurred:

> [DEFENSE COUNSEL]: I think we have to be a little more careful in terms of the phraseology, in terms of maybe following —
>
> THE COURT: I wasn't positing that. I'm open to suggestion.
>
> [DEFENSE COUNSEL]: It can be either or both, but for you — it can be either or both as —
>
> THE COURT: But any decision you make must be unanimous.
>
> [DEFENSE COUNSEL]: As to the particularized time.

Following further discussion, the court proposed to answer the question, "It can be either or both, but any decision you make concerning a particular time must be unanimous." Then the court separately asked the prosecutor and defense counsel if they agreed. Both answered "yes."

## 2. Law

¶ 45     The invited error doctrine rests on the principle that "a party may not complain on appeal of an error that he has invited or injected into the case; he must abide the consequences of his acts." *People v. Zapata*, 779 P.2d 1307, 1309 (Colo. 1989).  This doctrine "prevents a party from inducing an inappropriate or erroneous [ruling] and then later seeking to profit from that error."  *Horton v. Suthers*, 43 P.3d 611, 618 (Colo. 2002) (citation omitted).

¶ 46     "Invited error most often arises in holding a defendant responsible for tendering or agreeing to a jury instruction later challenged on appeal."  *People v. Foster*, 2013 COA 85, ¶ 26. Similarly, as to answering a jury question, "[b]ecause defendant acceded to the court's response, he is precluded from raising this issue on appeal."  *People v. Phillips*, 91 P.3d 476, 484 (Colo. App. 2004).

¶ 47     In jury instruction appeals, invited error analysis has expanded from instructions tendered by the defense to affirmative acquiescence.  *Compare People v. Gregor*, 26 P.3d 530, 533 (Colo. App. 2000) ("Thus, defendant's affirmative proposal with respect to one instruction and acquiescence in two others, which related

directly to the first instruction, led to invited error here."), *with*

*People v. Butler*, 251 P.3d 519, 523 (Colo. App. 2010) (Invited error

does apply where "[t]he record shows that when the trial court

proposed amending the jury instruction defining when a police

officer acts under color of official authority by adding the phrase 'or

search warrant executed,' [and] defense counsel responded, 'That's

fine with me.'"). As the division explained in *Foster*, ¶ 36, "we read

[*People v. Gross*, 2012 CO 60M] to distinguish errors based on trial

counsel's omission from those of commission in limiting appellate

review. While appellate courts may review the former for plain

error, the latter generally will be unreviewable."

### 3. Application

¶ 48    Based on the extensive colloquy, in which defense counsel

actively participated, on both Instruction No. 15 and answering the

jury question, we conclude that error, if any, in either was invited.

¶ 49    Starting with the instruction, as in *Gregor*, *Butler*, and *Foster*,

defense counsel proposed a change and then affirmatively

acquiesced in the modified instruction. *People v. Perez-Rodriguez*,

2017 COA 77, does not suggest otherwise.

¶ 50    Granted, as in *Perez-Rodriguez*, here the trial court ultimately grouped all seventeen instructions in asking whether defense counsel had any objection.  Still, counsel's "no" answer must be read in context of the earlier specific discussion of Instruction No. 15, which defendant now seeks to challenge.  Because no similar specific discussion occurred in *Perez-Rodriguez*, the division concluded that "[i]t is not clear whether defense counsel's blanket statement indicating 'no objection' reflected deliberate agreement with all the instructions or was an inadvertent failure to object to the error defendant now claims."  *Id.* at ¶ 28.

¶ 51    As for the answer to the jury question, defense counsel's approval is even clearer than in *Phillips*.  After the court proposed "But any decision you make must be unanimous," defense counsel responded, "As to the particularized time."  And the answer ("concerning a particular time") addressed this concern.

¶ 52    In the end, we go no further because "[t]he doctrine of invited error generally precludes appellate review of alleged errors that were invited by a party's affirmative conduct."  *People v. Becker*, 2014 COA 36, ¶ 20.

### III. Conclusion

¶ 53    The judgment is affirmed.

JUDGE NAVARRO and JUDGE KAPELKE concur.