The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 13, 2021

## 2021COA66

**No. 19CA1114, *Peo v Hasadinratana* — Crimes — Possession of Weapons by Previous Offenders; Criminal Law — Affirmative Defenses — Choice of Evils**

A division of the court of appeals holds that, in *People v. Carbajal*, 2014 CO 60, 328 P.3d 104, our supreme court implicitly overruled the holding in *People v. DeWitt*, 275 P.3d 728 (Colo. App. 2011).  In this case, the division specifically holds that a defendant charged with possession of a weapon by a previous offender cannot assert the affirmative defense of choice of evils based solely on a showing that he or she possessed a firearm while walking in what is generally known as a high crime neighborhood.  Because such a showing, without more, does not establish the threat of imminent harm, which *Carbajal* held is required to assert a choice of evils defense, the division affirms the defendant's judgment of conviction.

COLORADO COURT OF APPEALS                                    **2021COA66**

---

Court of Appeals No. 19CA1114
El Paso County District Court No. 18CR2188
Honorable Jann P. DuBois, Judge
Honorable Scott B. Epstein, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Payut Cody Hasadinratana,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE LIPINSKY
Pawar and Taubman*, JJ., concur

Announced May 13, 2021

---

Philip J. Weiser, Attorney General, Daniel E. Rheiner, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Sarah R. Rowlands, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1     In *People v. Carbajal,* 2014 CO 60, 328 P.3d 104, our supreme court held that defendants charged with possession of a weapon by a previous offender (POWPO) pursuant to section 18-12-108, C.R.S. 2020, are entitled to the affirmative defense of choice of evils only if they possessed the weapon to defend themselves, their homes, or their property from what they reasonably believed to be a threat of imminent harm.

¶ 2     The *Carbajal* court did not address the effect of its decision on *People v. DeWitt,* 275 P.3d 728 (Colo. App. 2011), which read the choice of evils affirmative defense more expansively than did the majority in *Carbajal.* Specifically, in *DeWitt,* a division of this court held that a defendant was entitled to an affirmative defense instruction to POWPO based on a "general fear for his personal safety," coupled with fear related to "specific trends of violence and incidents in the areas where he regularly walked and in the stores that he regularly visited." 275 P.3d at 734.

¶ 3     We hold that the reasoning of *DeWitt* cannot be squared with *Carbajal.* For that reason, we decide that *Carbajal* implicitly overruled *DeWitt* to the extent *DeWitt* stands for the proposition that defendants charged with POWPO are entitled to assert the

1

affirmative defense of choice of evils based solely on a showing that they possessed a firearm while walking in what is generally known as a high-crime neighborhood.

¶ 4    Defendant, Payut Cody Hasadinratana, directly appeals his conviction for POWPO. He contends that the district court erred by declining to instruct the jury on the affirmative defense of choice of evils. In light of our reading of *Carbajal*, we disagree and affirm his judgment of conviction.

## I.    Background

¶ 5    According to the affidavit of probable cause in support of Hasadinratana's arrest, police were dispatched to an inn based on a report of a physical disturbance involving two men with guns and masks. The reporting party said the suspects could be found by a nearby gas station. A police officer arrived and saw Hasadinratana, who matched the description of one of the suspects, walking away from the inn toward the gas station. When the officer stopped him, Hasadinratana told the officer he had a gun in his possession. The officer found the gun in the waistband of Hasadinratana's pants.

¶ 6    Because Hasadinratana had a prior felony conviction, the prosecution charged him with POWPO.

¶ 7    Hasadinratana endorsed the affirmative defense of choice of evils under section 18-1-702, C.R.S. 2020.

¶ 8    At a pretrial hearing, Hasadinratana testified that he lived in a high-crime neighborhood plagued by gang and drug activity and violent incidents.  He said the police had an active presence in the neighborhood.  He also testified that, during the thirty years he lived in the neighborhood, he witnessed incidents of violence and had been a crime victim.  He reported that property had been stolen from his car and his yard, and that people had tried to break into his home while he was away.  However, Hasadinratana did not testify to any facts showing that he had a reasonable belief that he faced a threat of imminent harm at the time of his arrest.

¶ 9    Following that testimony and the parties' arguments, the district court denied Hasadinratana's request to assert the affirmative defense of choice of evils, explaining,

> [To be able to assert that affirmative defense to POWPO, there has to be a] specific, definite, and imminent threat, and while I would acknowledge that this defendant, because of where he lived, may have had a generalized perception that he was potentially in danger, there was nothing on this occasion that required him to arm himself since there was nothing imminent that I've heard.

3

¶ 10 Hasadinratana filed a motion to reconsider, arguing, among other things, that "[t]he accused need not present evidence of imminent threat, just that the weapon was possessed for a constitutionally protected purpose, i.e. defense of person or property." He repeated that argument on the morning of the first day of trial.

¶ 11 The district court denied the motion to reconsider and reaffirmed its ruling that, because Hasadinratana had not presented evidence of a threat of imminent harm, he would not be allowed to assert the affirmative defense of choice of evils at trial. However, over the prosecutor's objection, the court granted Hasadinratana's request for the following theory of defense instruction:

> It is the defense theory of the case that Mr. Hasadinratana carried a weapon for what he believed was a constitutionally protected purpose, namely, to protect person and property. Notwithstanding a prior felony conviction, Mr. Hasadinratana believed he was justified in carrying a weapon under a belief of threat of harm to person or property.

¶ 12 The jury found Hasadinratana guilty of POWPO and the court sentenced him to three years of probation.

4

## II. Applicable Law and Standard of Review

¶ 13    To be entitled to assert an affirmative defense, a defendant must present "some credible evidence" supporting the defense. § 18-1-407(1), C.R.S. 2020; *People v. DeGreat*, 2018 CO 83, ¶ 16, 428 P.3d 541, 544. This burden is "relatively lenient." *DeGreat*, ¶ 22, 428 P.3d at 545. In determining whether a defendant met the burden, we view the proffered evidence in the light most favorable to him. *Cassels v. People*, 92 P.3d 951, 955 (Colo. 2004) (citing *Mata-Medina v. People*, 71 P.3d 973, 979 (Colo. 2003)). Also, because the jury decides the credibility of evidence, the burden can be met even if the only supporting evidence is "highly improbable" testimony from the defendant. *DeGreat*, ¶ 22, 428 P.3d at 545 (quoting *Lybarger v. People*, 807 P.2d 570, 579 (Colo. 1991)).

¶ 14    However, as a matter of law, a trial court need not give an affirmative defense instruction if the record contains no evidence to support it because, in the absence of supporting evidence, there is no issue of fact for the jury to resolve. *O'Shaughnessy v. People*, 2012 CO 9, ¶ 13, 269 P.3d 1233, 1236.

¶ 15    Whether a defendant has met his burden of showing entitlement to an affirmative defense presents a question of law that we review de novo. *DeGreat*, ¶ 16, 428 P.3d at 544.

## III.  Analysis

¶ 16    Hasadinratana relies primarily on *DeWitt* to support his argument that he presented sufficient evidence to entitle him to assert a choice of evils affirmative defense. Before we address *DeWitt*, we discuss the relevant supreme court precedent and model jury instructions.

¶ 17    In 1975, in *People v. Blue*, the supreme court held that the POWPO statute was a legitimate exercise of the state's police power and did not facially violate article II, section 13, of the Colorado Constitution, which protects a person's right to bear arms. 190 Colo. 95, 102-04, 544 P.2d 385, 390-91 (1975). The court explained that a defendant charged with POWPO can assert the affirmative defense of choice of evils, which allows the possession of a weapon "to avoid an imminent public or private injury." *Id.* at 103, 544 P.2d at 391 (quoting § 18-1-702).

¶ 18    Two years later, the supreme court noted that *Blue* left open the question of whether the POWPO statute could be

unconstitutional as applied in a particular case. *See People v. Ford*, 193 Colo. 459, 461, 568 P.2d 26, 28 (1977). To reconcile the POWPO statute with the constitutional right to bear arms, the supreme court held in *Ford* that a defendant charged with POWPO "who presents competent evidence showing that his purpose in possessing weapons was the defense of his home, person, and property thereby raises an affirmative defense." *Id.* at 462, 568 P.2d at 28.

¶ 19    Based on *Ford,* a model criminal jury instruction for an affirmative defense to POWPO was subsequently adopted that read, "[i]t is an affirmative defense to the crime of [POWPO] that the defendant possessed the weapon for the purpose of defending his [home] [person] [property]." CJI-Crim. 7:63 (1983). The same model instruction appeared in the 2008 update to the model instructions. *See* COLJI-Crim. H:51 (2008).

¶ 20    In *Carbajal,* the supreme court considered whether a trial court erred by adding the following italicized clause to the model instruction: "It is an affirmative defense to the charge of possession of a weapon by a previous offender that the defendant possessed a firearm for the purpose of defending himself, home, or property *from*

7

*what he reasonably believed to be a threat of imminent harm."*

*Carbajal,* ¶ 7, 328 P.3d at 106 (emphasis added).

¶ 21    The supreme court held that the trial court did not err by adding the requirements of reasonableness and imminence to the model instruction. *See id.* at ¶¶ 10-21, 328 P.3d at 106-09. After analyzing *Blue* and *Ford,* the supreme court concluded that "the POWPO affirmative defense is the statutory defense of choice of evils." *Id.* at ¶ 21, 328 P.3d at 109. The court reasoned that "the choice of evils defense was the legislature's way of preserving [the constitutional right to bear arms] in connection with POWPO." *Id.* at ¶ 17, 328 P.3d at 108. Notably, in approving the trial court's modified instruction, *id.* at ¶ 21, 328 P.3d at 109, the court disapproved of the then-existing model instruction for the affirmative defense to POWPO, *see id.* at ¶ 20, 328 P.3d at 108-09.

¶ 22    Consistent with *Carbajal,* the model jury instruction was amended again to state that the affirmative defense to POWPO applies only if the defendant "possessed the weapon for the purpose of defending his [her] home, person or property *from what he [she] reasonably believed to be a threat of imminent harm* which was about to occur because of a situation occasioned or developed

8

through no conduct of the defendant." COLJI-Crim. H:64 (2014) (emphasis added). (The language, "which was about to occur because of a situation occasioned or developed through no conduct of the defendant," mirrors language in the choice of evils statute, section 18-1-702(1). *See id.* at cmt. 2 (citing *Carbajal*, ¶ 21 n.5, 328 P.3d at 109 n.5).)

¶ 23    Hasadinratana repeatedly argued in the district court that the affirmative defense to POWPO has no imminence requirement (although his tendered instruction included the imminence requirement and tracked COLJI-Crim. H:64 (2014)).

¶ 24    In his opening brief on appeal, Hasadinratana describes *Carbajal* in a single paragraph, and neither applies it nor discusses how the imminence requirement applies to the facts in his case. Instead, he primarily relies on *DeWitt*, in which a division of this court held that the trial court erred by rejecting the defendant's tendered affirmative defense instruction to POWPO because "[the] defendant not only testified to a general fear for his personal safety, but also tied his fear to specific trends of violence and incidents in the areas where he regularly walked and in the stores that he regularly visited." 275 P.3d at 734.

¶ 25    In *DeWitt*, the defendant's tendered affirmative defense instruction said, "[i]t is an affirmative defense to the crime of [POWPO] that the defendant's purpose in possessing weapons was the defense of his home, person, and property." *Id.* at 733. Notably, that language reflected the pre-*Carbajal* model instruction. That instruction made no reference to a reasonableness or imminence requirement. *See* COLJI-Crim. H:51 (2008); CJI-Crim. 7:63 (1983). Also, *DeWitt* does not mention the concept of imminence or the affirmative defense of choice of evils. (The same is true of the supreme court's 1977 *Ford* opinion.)

¶ 26    Although *Carbajal* did not explicitly overrule *DeWitt*, as noted above, we hold that *Carbajal* implicitly overruled *DeWitt*. In light of *Carbajal*, we cannot follow the suggestion in *DeWitt* that a defendant charged with POWPO is entitled to assert the affirmative defense of choice of evils where the defendant showed only that he possessed a firearm while walking in what is generally known as a high-crime neighborhood. That scenario, without more, does not show a threat of imminent harm. "'Imminent' means 'likely to happen without delay; impending; threatening.'" *Moczygemba v. Colorado Dep't of Health Care Pol'y & Fin.*, 51 P.3d 1083, 1087

10

(Colo. App. 2002) (quoting *Webster's New World Dictionary* 702 (1972)); *see People v. Brandyberry*, 812 P.2d 674, 678 ("'Imminent' means 'near at hand, impending or on the point of happening.'" (quoting Black's Law Dictionary 676 (rev. 5th ed. 1979)).

¶ 27    Similarly, Hasadinratana showed only that he was walking in what is generally known as a high-crime neighborhood at 12:45 a.m.  It does not matter that police were dispatched to the inn based on a report of a physical disturbance involving two men with guns and masks because Hasadinratana concedes that he was not aware of that disturbance when the officer stopped him.  These facts fall short, as a matter of law, to show that Hasadinratana possessed the firearm to protect himself "from what he reasonably believed to be a threat of *imminent* harm."  *Carbajal*, ¶ 21, 328 P.3d at 109 (emphasis added); *see O'Shaughnessy*, ¶ 13, 269 P.3d at 1236.

## IV.   Conclusion

¶ 28    The judgment is affirmed.

JUDGE PAWAR and JUDGE TAUBMAN concur.